SYLVIA A. KULAK, Respondent, v NATIONWIDE MUTUAL INSUR-ANCE COMPANY, Appellant.

Fourth Department, April 23, 1975

*Miller, Bouvier, O'Connor & Cegielski (John M. Freyer* and *Robert J. Hunt* of counsel), for appellant.

*Grossman & Levine (Terry D. Smith* of counsel), for respondent.

CARDAMONE, J. As the result of an auto accident the plaintiff recovered a $60,000 judgment for personal injury damages against the insured, whose insurance coverage with defendant-appellant, Nationwide Mutual Insurance Company, was limited to $10,000. The insured thereafter assigned her rights under the insurance contract to the injured plaintiff who, as assignee, commenced this action against Nationwide for its failure to exercise good faith in handling the personal injury claim against its insured. Nationwide has appealed a jury verdict against it for $70,000 compensatory damages and $5,000 punitive damages awarded plaintiff in her bad faith action.

Because a liability insurer in New York has exclusive

control in managing claims against its insured, it has an implied contractual obligation to consider settlement opportunities in good faith *(Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 437, 445, cert den 410 US 931). "Since the company, therefore, has power, through the control of settlement, to adversely affect the insured's interests, it must necessarily bear a legal responsibility for the proper exercise of that power. Thus, the law imposes upon the insurer the obligation of good faith—basically the duty to consider, in good faith, the insured's interests as well as its own when making decisions as to settlement. Bad faith—the failure to comply with this obligation—is generally proven by evidence largely circumstantial in nature." *(Cappano v Phoenix Assur. Co. of NY,* 28 AD2d 639, 640; see, generally, Recent Developments, 58 Cornell L Rev 1255.) In the present case the evidence reveals that (1) plaintiff's injuries were severe, (2) the assumption of risk defense was highly improbable, (3) the insurer failed to inform its insured or its trial counsel of the policy limits, (4) the insurer refused to follow the advice of its trial counsel in settlement negotiations and (5) it failed to settle within policy limits when the opportunity was presented. All of us are agreed that such is sufficient to support the jury's determination that the insurer failed to act in good faith *(Peterson v Allcity Ins. Co.,* 472 F2d 71; PJI 4:67 [1974 Supp]).

The insurer contends and the dissenters agree, however, that the Trial Judge erred in allowing independent attorneys to give their expert opinions on the probable outcome of the original personal injury trial over insurer's specific objection. Although the courts of New York have not clearly resolved this issue to date, other jurisdictions have found such expert testimony admissible and helpful in similar cases *(Worden v Tri-State Ins. Co.,* 347 F2d 336, 340–341; *American Cas. Co. of Reading, Pa. v Howard,* 187 F2d 322, 328). We believe that experienced trial attorneys possess a unique expertise in evaluating prior to trial the probable success of personal injury claims and defenses, the probable range of personal injury damage awards, trial strategy, settlement potential, evaluation based upon available admissible evidence, reasonableness of settlement negotiations and conduct in handling automobile accident injury claims. Such expertise is obviously outside the personal knowledge or "ken" of the average juror. Concededly, expert testimony is no substitute in a bad faith trial for direct evidence of what in fact occurred before and

during the prior personal injury trial; such facts must be independently proven. The opinions of experienced attorneys, however, provide a helpful aid to the jury in understanding and drawing proper inferences from the technical factual background (Richardson, Evidence [10th ed], § 367). Therefore, we conclude that under appropriate supervision by the trial court opinion testimony by qualified experts on a bad faith claim is admissible. Here the trial court permitted qualified experts for both plaintiff and defendant to testify and properly instructed the jury that it need not accept such expert testimony, if it chose not to. The dissent would rigidly apply common-law evidentiary rules to this relatively novel situation, unknown and unforeseen in the precedents cited. Such an approach appears to us unduly limited in view of the apparent unquestioned acceptance of such expert testimony in bad faith actions (see *Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 444, *supra* ; *Cornwell v Safeco Ins. Co.,* 42 AD2d 127, 137; *Peterson v Allcity Ins. Co.,* 472 F2d 71, 78, *supra;* PJI 4:67 [1974 Supp]).

We agree with appellant's contention that the trial court erred in permitting the jury to award punitive damages. The record is devoid of any evidence that the insurer acted with malice or intent to harm the insured. Without such an evidentiary foundation, an award of punitive damages is improper (2 NY PJI 60 [1974 Supp]; Recent Developments 58 Cornell L Rev 1255, 1268). The trial court also erred when it adopted the measure of damages applicable where the insured is *insolvent. (Gordon v Nationwide Mut. Ins. Co., supra,* pp 448–452.) Where the insured owns several parcels of realty, bank accounts, and other personalty, as in this case, the rule is that compensatory damages are measured by the amount of the excess judgment. *(Peterson v Allcity Ins. Co., supra,* pp 79–80; *Young v American Cas. Co. of Reading, Pa.,* 416 F2d 906, 911–912; *Gordon v Nationwide Mut. Ins. Co., supra,* pp 448–449; 2 NY PJI 58–60 [1974 Supp].)

We conclude, therefore, that since the jury determined that the insurer failed to exercise good faith, the measure of compensatory damages to which plaintiff is entitled is the amount by which the prior tort judgment exceeded insured's policy coverage (to wit $50,000) plus interest on this amount from the date of the tort judgment to the date of the verdict in the bad faith action (CPLR 5003). Plaintiff is also entitled to post-verdict interest on this total award (CPLR 5002).

The judgment should be modified accordingly.

DEL VECCHIO, J. (dissenting). Plaintiff, as assignee of an insured, brought this action against the insurer to recover damages sustained as a result of the insurer's alleged bad faith in failing to settle a personal injury claim against the insured within the policy limits. Seeking to recover from the insurer the amount by which the verdict in the personal injury action exceeded the coverage of the policy, with interest, plaintiff assignee—who was the plaintiff in the previous action—has received an award of $75,000 from the jury. Although the evidence was sufficient to support a verdict in favor of plaintiff, errors in the admission of evidence, aggravated by comments during the charge, affected a substantial right of the defendant and require a new trial.

The ultimate issue for determination by the jury was whether the insurer's failure to settle the personal injury claim within the coverage of the policy was "a breach of implied conditions of the [insurance] contract to act in its performance in good faith in refusing to settle within the policy limits" (Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427, 436–437, cert den 410 US 931). The resolution of that issue would include consideration, among other factors, of the likelihood of a successful defense against the personal injury claim and the probable amount of a verdict against the insured in the event of an unsuccessful defense.

As bearing on these two considerations plaintiff, over strenuous and timely objection by defendant, was permitted to put before the jury opinion evidence of two experienced trial attorneys, neither of whom had had any involvement in the personal injury action. The witnesses were members of the Bar of the State of New York and were offered as experts in the field of accident reparations. On direct examination they gave their professional backgrounds and affiliations and testified to their extensive experience in personal injury actions. In response to hypothetical questions they then expressed their opinions that the defenses relied on in the personal injury action were unreasonable and unlikely to succeed, that the odds were greatly in favor of the plaintiff in the personal injury action, that plaintiff's verdict in that action "would probably exceed $10,000" (the policy limit) and "there was little or no likelihood" that it "would be under $10,000". One of the attorneys also expressed the opinion "with a reasonable degree of professional certainty considering both the issue of

liability as we have discussed it and the issue of damages" that a sum (less than the policy limit) offered by the insurer during the course of the first trial "was not a realistic offer".

The foregoing "expert" testimony given with the benefit of hindsight and going to the very issues the jury would be called upon to resolve in determining whether or not plaintiff was entitled to a verdict in the bad faith action, should have been excluded under the rule set down in *Dougherty v Milliken* (163 NY 527). Expert testimony is admissible in two situations, neither of which existed in the present case: (1) when the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject; or (2) when the conclusions to be drawn depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In *People v Creasy* (236 NY 205, 222–223) the court said: "Facts are the appropriate subject of evidence. Inferences and conclusions to be drawn therefrom are for the jury. Opinion evidence is never allowed, except when from the nature of the case the facts cannot be stated in such a manner as to enable the jury to form an accurate judgment therefrom, and no better evidence than such opinions is available. *(Noah v Bowery Savings Bank,* 225 NY 284; *Schutz v Union Ry. Co. of N.Y. City,* 181 NY 33; *People v Underhill,* 142 NY 38; *Ferguson v Hubbell,* 97 NY 507; *Keefe v Armour & Co.,* 258 Ill 28; *People v Curtright,* Id. 430; *Hite v Keene,* 149 Wis 207; 1 Greenleaf on Evidence, sec 440 and note.)" More recently, in *Meiselman v Crown Heights Hosp.* (285 NY 389, 396) it was said: "where the matters are within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of such a nature as to require no special knowledge or skill, the opinion of experts is unnecessary [cases cited]."

Again, in *Clark v Iceland S.S. Co.* (6 AD2d 544, 547, rearg and mot. for lv to app den 7 AD2d 837) the condition under which opinion evidence may be received was restated: "The general rule is that where the subject of the inquiry is of such technical nature that a proper conclusion from the facts depends upon professional or scientific skill, qualified experts may express their opinion as to the proper inference to be drawn from a given set of facts."

Tested by these guidelines, we do not believe the present case was an instance in which opinion evidence was properly received or in which there should have been a departure from the "fundamental principle of testimonial evidence that a witness should testify as to facts, leaving it to the jury or other trier of fact to draw the conclusions therefrom, and that the witness should not give his opinion or conclusion upon the facts" (1 Mottla, New York Evidence, § 291). The potentiality of a successful defense of the personal injury action and the likelihood of a verdict in excess of the policy limit were matters of speculation which could be determined by the jury by the application of their own experience, observation and knowledge *(Vispetto v Bassuk,* 41 AD2d 958). The facts as to the proposed defenses and the extent of the injuries sustained by the injured claimant, as to which extensive proof was put before the jury in this bad faith action, required no special knowledge or skill, and the conclusion to be drawn from those facts as to a likely outcome in the personal injury action did not depend upon professional or· scientific ability. Consequently, the opinion evidence was unnecessary (see *Waters v American Cas. Co. of Reading, Pa.,* 261 Ala 252; and *Dumas v Hartford Acc. & Ind. Co.,* 94 NH 484) and therefore, under the law of this State, improper *(People v Creasy,* 236 NY 205, *supra).* A contrary view, described in *Worden v Tri-State Ins. Co.* (347 F2d 336) as what "should be" the law of Kansas, and set forth in *American Cas. Co. of Reading, Pa. v Howard* (187 F2d 322), where such evidence was received without apparent objection, is not persuasive.

The fact that the lawyer witnesses might be better able than the jury to evaluate the defenses and to prognosticate the size of a verdict in the personal injury action, by virtue of previous involvement in personal injury litigation (at best an uncertain proposition), is not sufficient ground for receipt of their opinion testimony. In *Ferguson v Hubbell* (97 NY 507, 513–514) the court said: "To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eye-witnesses or to be as capable to draw conclusions from them as some witnesses might be, but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them and comprehend them sufficiently for the ordinary administration of justice."

We cannot say, in this bad faith action, that the jury was not qualified, without the opinions of experts, to reach an intelligent judgment as to the probability of the claimant's success at the hands of a jury in the personal injury action and as to the likelihood of the recovery of a verdict in excess of the policy limit.

The error in the admission of the improper evidence was heightened by remarks made by the trial court in the charge to the jury, where it was said, "I am sure that we all have the highest regard for these men, or at least a high regard for these men that were sworn as experts. To my way of thinking they are the best minds in the nation as far as that goes." At a later point the court indicated to the jury that it should give weight to the experts' opinions when it said, "If, taking into consideration the evidence, *the experts* and other evidence which you find credible in weighing the various factors refer-red to * * * ." (Emphasis supplied.)

In the circumstances disclosed by this record it cannot be concluded that the error was nonprejudicial such that it may be disregarded under CPLR 2002. The testimony improperly admitted put into the case something which was not otherwise there—professional opinions by two knowledgeable and experi-enced trial attorneys on issues which were within the compe-tence of the jury to decide. Because of the recital of the qualifications of the experts and the exalting comments by the Trial Judge, these opinions may well have been a significant factor which influenced the jury to reach the conclusion that it did. It is impossible to weed out the tainted testimony so as to eliminate the substantial and prejudicial error inflicted upon defendant. The experts' opinions invaded the province of the jury and their receipt constituted reversible error.

Judgment should be reversed and a new trial granted.

MARSH, P. J., and GOLDMAN, J., concur with CARDAMONE, J.; SIMONS and DEL VECCHIO, JJ., dissent and vote to reverse the judgment on the law and grant a new trial, in an opinion by DEL VECCHIO, J.

Judgment modified on the law in accordance with opinion by CARDAMONE, J., and as modified affirmed with costs to respondent.