Virginia DiBlasi, Plaintiff, and Joseph P. Caldara et al., Respondents-Appellants, v Aetna Life and Casualty Insurance Company, Appellant-Respondent.

Second Department, May 22, 1989

APPEARANCES OF COUNSEL

*J. Russell Clune, P. C. (Vincent J. Aceste, Kevin Conklin* and *Sharon A. Scanlan* of counsel), for appellant-respondent.

*Jack Strauss* for respondents-appellants.

### OPINION OF THE COURT

SPATT, J.

The measure of damages in a "bad faith" case involving a solvent insured against whom a judgment in an amount in excess of the policy limits has been rendered is the amount of the judgment in excess of the policy limits plus interest. Accordingly, in this case, the plaintiffs Joseph Caldara and Denise Castiello (now Denise Caldara) are not entitled to consequential damages for emotional distress or punitive damages. Nor are they entitled to consequential damages relating to their credit standing or the loss of an opportunity to obtain a mortgage to finance the prospective purchase of a home.

### The Underlying Action

On July 3, 1982, the plaintiff Virginia DiBlasi was a passen-

ger in a motor vehicle operated by Joseph Caldara and owned by Denise Castiello (now Denise Caldara), which crossed a double yellow line and struck another vehicle, causing personal injuries to DiBlasi.

The vehicle owned by Mrs. Caldara was insured with Aetna Casualty Company (hereinafter Aetna) with maximum coverage of $25,000 for any one person. DiBlasi commenced a negligence action against the Caldaras in the Supreme Court, Rockland County. (The record does not reveal if the owner and operator of the second vehicle were also joined in that action.)

After a jury was selected before Justice Stolarik in the Supreme Court, Rockland County, on April 23, 1985, DiBlasi's counsel agreed to accept $23,000 in settlement of the action, and Aetna's attorney made a top offer of $17,500. The case went to trial, the jury verdict was for $42,000 and, on May 30, 1985, a judgment was entered in favor of DiBlasi against the Caldaras in the total sum of $42,390, including costs and disbursements. Aetna then paid $25,390, the maximum amount under its policy, leaving a balance of $17,000 as an outstanding judgment against the Caldaras.

### The Assignments of the "Bad Faith" Claim

On November 19, 1986, the Caldaras executed two assignments of their "bad faith" cause of action against Aetna to DiBlasi. The first was an unqualified assignment of "any and all rights or causes of action for damages we may have against Aetna * * * based on its failure to negotiate * * * in good faith". The second and superseding assignment is more restrictive and provides as follows: "FOR VALUE RECEIVED, we JOSEPH P. CALDARA and DENISE CASTIELLO CALDARA, do assign to VIRGINIA DIBLASI a certain portion of a right or cause of action that we may have for damages against AETNA LIFE AND CASUALTY COMPANY *under Policy No. 74 SX 13890108 PCA based upon its failure to negotiate the above captioned action in good faith.* Specifically, that portion of said right or cause of action being hereby assigned pertains to the judgment entered against the undersigned in favor of VIRGINIA DIBLASI in the amount of Forty-Two Thousand, Three Hundred and Fifty (42,350.00) Dollars, being Seventeen Thousand ($17,000.00) Dollars in excess of the Twenty-Five Thousand ($25,000.00) Dollar liability limit of the aforementioned policy. The undersigned represents that we were not insolvent at the time of the entry of said judgment on May 30th, 1985 and

have been damaged thereby, as well as otherwise" (emphasis supplied).

■ A fair interpretation of this restricted assignment is that it purports to assign to DiBlasi only a portion of the Caldaras' "bad faith" cause of action, namely, the sum of $17,000 (the excess sum over the policy limits), representing the amount of the original judgment against the Caldaras in the sum of $42,350, less the sum paid by Aetna in the amount of $25,390. By implication, the execution of this restricted assignment of the Caldaras' "bad faith" cause of action against Aetna retained for the Caldaras any other claim for damages resulting from the failure of Aetna to settle the DiBlasi claim within the policy limits. Although the partial assignment of the bad faith cause of action to the plaintiff DiBlasi may appear at first glance to be an improper splitting of a cause of action (see, 930 Fifth Corp. v King, 42 NY2d 886; Kelley v Champlain Studios, 223 App Div 240, 241), in fact, there was no split since all parties to the assignment were joined as plaintiffs in the instant action (see, Farmers' Reliance Mut. Ins. Co. v Lane Constr. Corp., 212 App Div 528, affd 244 NY 523).

## The Instant Action

The plaintiffs in the instant action commenced in January 1987 are Virginia DiBlasi, as assignee of Joseph and Denise Caldara and also Denise and Joseph Caldara, individually. The amended complaint is divided into three purported causes of action. The first cause of action states that it is on behalf of DiBlasi only and seeks damages in the sum of the $17,000, which was the amount then due and payable over the policy limits on the judgment in the underlying action.

The second cause of action and the third cause of action are brought on behalf of Joseph P. Caldara and Denise Caldara, respectively, and allege that on May 24, 1986, approximately one year after the entry of the judgment in the underlying action, the Caldaras executed a binder to purchase a one-family residence in Rock Tavern, New York, for the sum of $94,500. They further allege that when the recorded judgment in the underlying personal injury action was "uncovered", it caused them to lose a mortgage commitment and the prospective purchase of the house.

In the second cause of action, Mr. Caldara contends that, as a result of Aetna's "bad faith" in refusing to settle the underlying personal injury action, he sustained a plethora of

consequential damages. These include damages to his credit standing and reputation, emotional distress and embarrassment, the loss of a potential home and miscellaneous inconveniences and future expenses and losses attendant to the inability of him and his wife to purchase that home (i.e., rent, loss of appreciation of the value of the home, greater cost of another home, higher interest rates for a future mortgage on a home and discomfort of living in a small apartment), and punitive damages. For the above myriad elements of damages, Mr. Caldara requests $250,000.

In the third cause of action, Mrs. Caldara repeats the identical items of consequential damages sought by Mr. Caldara in the second cause of action, and also asks for $250,000.

On June 18, 1987, DiBlasi settled the first cause of action for $8,000. The stipulation of discontinuance is drawn in favor of Virginia DiBlasi "only". A satisfaction of judgment in favor of the Caldaras was executed by DiBlasi on June 18, 1987. The release given by DiBlasi to Aetna states as follows: "This release is specifically intended to release only those claims made by VIRGINIA DIBLASI, and is not to be construed as a release of any other claims by JOSEPH P. CALDARA and DENISE CASTIELLO (CALDARA)."

The defendant Aetna then moved for summary judgment dismissing the amended complaint insofar as it is asserted on behalf of the remaining plaintiffs, the Caldaras, upon the grounds that (1) the Caldaras assigned their claims to DiBlasi who settled for the sum of $8,000 and, therefore, they have no standing in this case, and (2) the remaining damages sought by the Caldaras "are not damages recognized in New York" in "bad faith" cases.

The order appealed from awarded summary judgment to Aetna as against the Caldaras and (1) dismissed the first cause of action to recover for the amount of the judgment in excess of the policy limits on the ground that it had been settled and was discontinued, (2) struck the punitive damage demands, and (3) struck the demands for damages for emotional distress which included the specific claims for damages listed by the Caldaras as humiliation and embarrassment, emotional upset and disappointment in not being able to purchase a one-family house. However, the Supreme Court, Rockland County, declined to strike the other demands for damages involving the alleged impairment of the Caldaras' credit standing, reputation, the loss of the mortgage commitment, delay in expanding

their family and loss of their prospective home with the resultant increase in the price and mortgage interest rates for a comparable home.

On appeal, in addition to its contentions raised on the motion for summary judgment, Aetna further contends that the Caldaras have not established, prima facie, a bad faith refusal to settle the underlying action within the policy limits.

## A Prima Facie "Bad Faith" Case

A review of the record reveals that the major injury sustained by the plaintiff DiBlasi was a dislocation of the right elbow with a chip fracture of the coronoid process of the right elbow. This has resulted in collateral ligament laxity, calcification in the joint capsule and posttraumatic changes in the right elbow joint which may lead to symptomatic arthritis. Dr. Howard A. Levin, the plaintiff DiBlasi's physician, testified at the trial that the bones of the forearm were displaced from the elbow joint about 1½ inches to the rear and also about one inch to the side. He stated that when such a dislocation occurs, all the ligaments which normally hold the elbow joint in place are torn. Dr. Levin further testified that there is calcification in the ligaments surrounding the plaintiff's elbow joint which constitutes posttraumatic arthritis which is not only permanent but is progressive.

It is significant to note that the defendant did not produce its examining physician. A review of his report indicates that he would have testified that, at the time of his examination on October 10, 1984, the plaintiff DiBlasi still had objective findings of injury with mild collateral ligament laxity and calcification in the joint capsule.

■ A bad faith case is established where the liability is clear and the potential recovery far exceeds the insurance coverage. The carrier cannot be held liable if its decision not to settle was the result of an error of judgment on its part or even by a failure to exercise reasonable care (St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co., 43 NY2d 977; Best Bldg. Co. v Employers' Liab. Assur. Corp., 247 NY 451; Colbert v Home Indem. Co., 35 AD2d 326). While the standard is not that of " 'a sinister motive—guilty knowledge—an intent to do harm or deprive another of his just rights and property' " (Cappano v Phoenix Assur. Co., 28 AD2d 639, 640), "[m]ere negligence does not support an excess liability action" (Brennan v Mead, 81 AD2d 821, affd 54 NY2d 811; see also, Brown

*v United States Fid. & Guar. Co.,* 314 F2d 675). Although the standard is not clear-cut, our review of the cases in New York leads us to the conclusion that there is a cause of action only if the decision not to settle within the policy limits was made in bad faith, meaning in gross disregard of its insured's interests (PJI 4:67 [Supp]).

Stated otherwise, the law imposes upon the carrier the obligation of good faith which is basically the duty to fairly consider the insured's interests as well as its own in making the decision as to settlement *(see, Parisi v Maryland Cas. Co.,* NYLJ, Nov. 26, 1968, at 18, col 7, *affd* 32 AD2d 1030, *affd* 27 NY2d 505; *Cappano v Phoenix Assur. Co.,* 28 AD2d 639, *supra).* In arriving at a workable standard so that the concept could be clear to a juror, one of the major cases interpreting New York law used the following language: Was it "highly probable that [the insured] would be subjected to personal liability"? *(Brockstein v Nationwide Mut. Ins. Co,* 417 F2d 703.) This is the proper standard for determining liability in a bad faith case *(see also, Bates v Merchants Mut. Ins. Co.,* 277 F Supp 308, 312, *affd* 392 F2d 591). In sum, in this case, where liability in the underlying action was clear, the only remaining issue is whether it was "highly probable" that the severity of the injuries would result in a verdict in excess of the policy limits.

Applying the above-stated principles to the facts of this case, a reasonably prudent insurance adjuster and/or defense attorney must have realized that since DiBlasi, who was 22 years old at the time of the accident, sustained an undisputedly painful, permanent and progressive injury to the right elbow, it was "highly probable" that the verdict would be in excess of $25,000. Therefore, in compliance with the carrier's implied covenant of good faith in the settlement of the underlying action, a prima facie case of bad faith was pleaded and triable issues exist sufficient to survive Aetna's motion for summary judgment on the liability phase of this lawsuit *(see, for example, St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co.,* 43 NY2d 977, *supra; Knobloch v Royal Globe Ins. Co.,* 38 NY2d 471; *Reifenstein v Allstate Ins. Co.,* 92 AD2d 715).

### The Measure of Damages in a "Bad Faith" Case

■ Initially, we find that in a "bad faith" case such as this one, in the absence of malice or intent to harm, the plaintiff is

not entitled to punitive damages. As set forth in *Kulak v Nationwide Mut. Ins. Co.* (47 AD2d 418, 421, *revd on other grounds* 40 NY2d 140), the rule is as follows: "We agree * * * that the trial court erred in permitting the jury to award punitive damages. The record is devoid of any evidence that the insurer acted with malice or intent to harm the insured. Without such an evidentiary foundation, an award of punitive damages is improper (2 NY PJI 670 [1974 Supp]; Recent Developments 58 Cornell L Rev 1255, 1268)".

Also, in *Reifenstein v Allstate Ins. Co.* (92 AD2d 715, 716-717, *supra*), the court affirmed the striking of a demand for punitive damages in the following language: "We agree, however, that the punitive damage allegations were properly dismissed. Without the factual allegations that Allstate ' "in its dealings with the general public * * * had engaged in fraudulent scheme evincing such 'a high degree of moral turpitude and * * * such wanton dishonesty as to imply a criminal indifference to civil obligations' " ', plaintiff is not entitled to seek punitive damage *(Granato v Allstate Ins. Co.,* 70 AD2d 948, 949, *[lv denied* 48 NY2d 610, quoting from *Walker v Sheldon,* 10 NY2d 401, 405], see, also, *Royal Globe Ins. Co. v Chock Full O'Nuts Corp.,* 86 AD2d 315, 318-319). 'Allegations of breach of an insurance contract, even a breach committed willfully and without justification, are insufficient to authorize recovery of punitive damages.' *(Catalogue Serv. of Westchester v Insurance Co. of North Amer.,* 74 AD2d 837, 838 * * *)".

As to compensatory damages, our review of the cases in this field leads us to the conclusion that the measure of damages in this "bad faith" case is the amount by which the judgment in the underlying tort action exceeded the insured's policy coverage (in this case, the sum of $17,000) plus interest on this amount from the date of the underlying judgment to the date of the verdict in the bad faith action *(see,* CPLR 5003). We have found no appellate decision in New York which has affirmed the award of damages for emotional distress, consequential damages involving the credit standing of the insured or, in fact, any damages other than the amount of the judgment in the underlying action in excess of the policy limits, plus interest. While there is a reference to damage to credit standing and reputation in the concurring opinion of Chief Judge Fuld in *Gordon v Nationwide Mut. Ins. Co.* (30 NY2d 427, 439, *cert denied* 410 US 931), the facts in *Gordon* are totally dissimilar in that the insured in that case appears to

have been insolvent and without a credit standing, and the reference to reputation or credit standing was purely dicta.

The contractual, rather than tortious, foundation of a bad faith case was discussed in *Gordon v Nationwide Mut. Ins. Co. (supra)*, in which the receiver (Gordon) for the insured defendant in the underlying personal injury action arising from an automobile accident recovered a judgment of $259,058.87 on a jury verdict *(see, Gordon v Nationwide Mut. Ins. Co.,* 37 AD2d 265, 268). The Court of Appeals dismissed the bad faith cause of action on an unrelated ground and defined such a cause of action as a breach of an implied covenant to act in good faith *(Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 430, *supra).* The majority opinion by Judge Bergan contained the following pertinent comment: "The punitive nature of damage for the bad faith breach of contract is a characteristic of the law of contracts generally, and is not a peculiarity alone of the contract of liability insurance. In every contract 'there exists an implied covenant of good faith and fair dealing' *(Kirke La Shelle Co. v Armstrong Co.* (263 N.Y. 79, 87)" *(Gordon v Nationwide Mut. Ins. Co., supra,* at 437).

In his dissenting opinion in *Gordon,* Judge Breitel noted, in pertinent part:

"The rule regarding the insurer's liability for wasted opportunities to settle as a result of bad faith withdrawal from the defense should be followed. Certainly, in the instance of a solvent insured who has been denied the valuable right to have his insurer consider a strategic settlement within policy limits, the insurer should be held responsible for all the consequences of its conduct, and *the measure of that loss ordinarily would be the amount of the excess judgment, for exactly the reasons expressed by the California court ([Comunale v Traders & Gen. Ins. Co.,] 50 Cal 2d 654, supra). * * *

"Regardless of the insured's financial responsibility most courts automatically adopt the excess judgment as the measure of damages in the insured's contract action" *(Gordon v Nationwide Mut. Ins. Co., supra,* at 448 [emphasis added]).

In *Knobloch v Royal Globe Ins. Co.* (38 NY2d 471, *supra),* the Court of Appeals reinstated a jury verdict for the difference between the policy limit and the judgment awarded after trial in the underlying personal injuries action, without discussion of emotional distress, consequential or punitive damages.

In *Kulak v Nationwide Mut. Ins. Co.* (40 NY2d 140, *supra),*

the verdict in a "bad faith" case was reduced by the Appellate Division, Fourth Department, to the exact sum in excess of the policy limits as awarded by the jury in the underlying action with interest from the date of entry of the underlying judgment. The court struck the punitive damages award. The opinion of Justice Cardamone in the Appellate Division (47 AD2d 418, 421), is highly informative on the subject of damages:

"The trial court also erred when it adopted the measure of damages applicable where the insured is *insolvent. (Gordon v Nationwide Mut. Ins. Co., supra,* [at] 448-452.) Where the insured owns several parcels of realty, bank accounts, and other personalty, as in this case, the rule is that compensatory damages are measured by the amount of the excess judgment. *(Peterson v Allcity Ins. Co.,* 472 F2d 71, 79-80; *Young v American Cas. Co. of Reading, Pa.,* 416 F2d 906, 911-912; *Gordon v Nationwide Mut. Ins. Co., supra,* [at] 448-449; 2 NY PJI 58-60 [1974 Supp].)

"We conclude, therefore, that since the jury determined that the insurer failed to exercise good faith, the measure of compensatory damages to which plaintiff is entitled is the amount by which the prior tort judgment exceeded insured's policy coverage (to wit $50,000) plus interest on this amount from the date of the tort judgment to the date of the verdict in the bad faith action (CPLR 5003). Plaintiff is also entitled to post-verdict interest on this total award (CPLR 5002)".

In *St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co.* (43 NY2d 977, 978-979, *supra),* the Court of Appeals affirmed a judgment in favor of an excess insurance carrier based on the primary carrier's bad faith in refusing to settle a claim after a liability verdict against its insured, in the following language: "Given a record which adequately supports these affirmed findings, amounting to a breach of the defendant's implied obligation to manage its insureds' defense in good faith *(see, e.g., Gordon v Nationwide Mut. Ins. Co., [supra]; cf.,* Insurance Law, § 40-d, added by L 1970, ch 296, § 1), the imposition of liability for the excess judgment borne by the plaintiff was appropriate".

In *Henegan v Merchants Mut. Ins. Co.* (31 AD2d 12, 15), the "bad faith" cause of action was held to be one sounding in contract: "Finally, we observe that while the cause of action with which we are concerned is one for excess liability as distinguished from one for an amount within the policy limits,

we view each as sounding in contract and complete the moment judgment was entered. * * * As to the former, the instant action for breach of the implied covenant of good faith in the handling of the litigation and in the settlement of the action, damage and loss was sustained and the cause of action accrued upon entry of the excess judgment against plaintiffs. Actual payment of the excess of the judgment rendered against the insured is not a condition precedent to suit".

In *Reifenstein v Allstate Ins. Co.* (92 AD2d 715, 716, *supra),* a wrongful death action, Allstate refused to settle for the full $10,000 policy limit and a verdict was returned in excess of that sum. The damages issue was discussed as follows: "Where it is alleged that an insured lost an actual opportunity to settle the negligence claim against him within the coverage limits of his policy by reason of the insurer's purported 'bad faith,' he states a cause of action against the insurer *to recover the excess judgment* (see *United States Fid. & Guar. Co. v Copfer,* 48 NY2d 871, 873; *Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 436-437, cert den 410 US 931)" (emphasis supplied).

In *Peterson v Allcity Ins. Co.* (472 F2d 71, 79), the United States Court of Appeals for the Second Circuit reviewed the New York law of damages in a "bad faith" case and concluded that the jury was properly charged "that if their verdict was for the plaintiff, it had to be for the full amount of the excess or $70,000". This was the proper measure of damages, notwithstanding the dicta in *Gordon (supra)* referring to the distinction between a solvent insured, an insolvent insured and one who, while not technically insolvent, is of such meager means that a judgment is worth less than the full amount of the excess verdict. In this case, these distinctions are not in issue since the Caldaras have never alleged that they were either insolvent or unable to pay the amount of the verdict in excess of the policy limits.

Also, with regard to consequential damages for breach of contract, the Caldaras' claims for the loss of the mortgage and their prospective home are speculative, remote and could not be within the contemplation of the parties at the time of the execution of this insurance contract *(see, Kenford Co. v County of Erie,* 73 NY2d 312, 321 ["damages which may be recovered by a party for breach of contract are restricted to those damages which were reasonably foreseen or contemplated by the parties during their negotiations or at the time the contract was executed"]).

As to damages for emotional distress, there is no authority in this State to award such damages in a "bad faith" case, and we decline to extend the law to do so *(see, Wehringer v Standard Sec. Life Ins. Co.,* 57 NY2d 757; *Fleming v Allstate Ins. Co.,* 106 AD2d 426, *affd* 66 NY2d 838, *cert denied* 475 US 1096; *Korona v State Wide Ins. Co.,* 122 AD2d 120). Further, to compensate the Caldaras for damages to their credit standing and reputation would unreasonably extend the measure of damages in what is essentially an action to recover damages for breach of contract with fixed and readily ascertainable compensatory damages, namely, the amount of the judgment in the underlying action which is in excess of the policy limits, plus interest.

Relating these conclusions to the claimed damages in this case, we concur that the demands for punitive damages and for damages for emotional distress must be stricken. The only valid claim for damages is set forth in the first cause of action on behalf of the plaintiff DiBlasi for that portion of the judgment in the underlying action in excess of the policy limits, which claim was previously settled for the sum of $8,000.

All the remaining damage demands in the Caldaras' second and third causes of action with regard to their being compelled to reside in a cramped house, the loss of their opportunity to obtain a mortgage, buy a new home and related matters and the demands for damage to their credit standing and reputation are not proper elements of damages in a "bad faith" case.

Accordingly, since the only proper item of damages in this "bad faith" case is that portion of the judgment in the underlying action in excess of the policy limits, plus interest, which is demanded in the first cause of action of the amended complaint, and since that cause of action has already been settled and discontinued, the amended complaint insofar as it is asserted on behalf of the Caldaras must be dismissed in its entirety.

Accordingly, the order should be modified, on the law, by deleting the provisions thereof which denied, in part, that branch of the defendant's motion which was for summary judgment dismissing the amended complaint insofar as it is asserted on behalf of the respondents-appellants and substituting therefor a provision granting the defendant's motion in its entirety; as so modified, the order is affirmed insofar

as appealed and cross-appealed from, without costs or disbursements.

MOLLEN, P. J., THOMPSON and RUBIN, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof which denied, in part, that branch of the defendant's motion which was for summary judgment dismissing the amended complaint insofar as it is asserted on behalf of the respondents-appellants, and substituting therefor a provision granting the defendant's motion in its entirety; as so modified, the order is affirmed insofar as cross-appealed from, without costs or disbursements.