**CALIFORNIA UNION INSURANCE COMPANY, Plaintiff,**

v.

**EXCESS INSURANCE CO., LTD., Defendant.**

**No. 89 Civ. 7655 (CMM).**

United States District Court, S.D. New York.

Dec. 26, 1991.

---

Frederic R. Mindlin, Mound, Cotton & Wollan, New York City, for plaintiff.

Bernard Caesar and Deborah S. Levine, Bernard Caesar & Associates, New York City, for defendant.

METZNER, Senior District Judge:

Plaintiff California Union Insurance Company, (California Union), seeks damages from defendant Excess Insurance Co., Ltd., (Excess), for the alleged bad faith refusal to settle a law suit brought against Shipside Services, Inc., (Shipside), an insured who held a primary coverage policy with the defendant and an excess coverage policy with the plaintiff. The court has both personal and subject-matter jurisdiction of this diversity action.

Sometime between January 12 and January 23, 1984 a shipment of 719 cartons of men's shirts belonging to Bidermann Industries Financial Services, Inc., (Bidermann), disappeared from the premises of Shipside, a storage facility. At the time of the loss, Shipside held a primary insurance policy of $50,000 with a $5,000 deductible with Excess, and an excess insurance policy with a limit of $250,000 with California Union. On January 2, 1985 Bidermann commenced suit in New York State Supreme Court against Shipside and McRoberts Protective Agency, Inc, (McRoberts), the guard service hired by Shipside to protect its facility. Initially, Bidermann's complaint requested $120,000 in damages but in May, 1986 it increased its damage request to $221,000.

In December 1984, shortly before instituting suit, James Carbine, Bidermann's counsel, informed Saul Berkman, the attorney defending Shipside, that Bidermann would settle its claim for "100% or reasonably close thereto." Berkman replied that such a settlement would not be possible given the early stage of the proceedings. Berkman, on December 6, 1984, communicated this settlement demand and his rejection of it to A.H. Hahn Co., (Hahn), the insurance adjuster investigating the claim for both Excess and California Union. Hahn, in turn, informed Excess and California Union. Hahn had arranged for Berkman's retention in the Shipside litigation. The California Union claims supervisor responsible for the claim did not reply to this communication.

From 1985 until March, 1987 Carbine and Berkman met several times for discovery purposes. During this time Carbine made settlement demands for 100 per cent of the claim. Berkman never responded to these proposals.

In January, 1987, Douglas Ortelere, an attorney at the firm retained by California Union to monitor the suit, examined the case file at Berkman's office. Ortelere then wrote to California Union that Bidermann should not be paid the full demand which was based on damages for lost profits, but that the claim was worth $128,000 based on the cost of the merchandise. Thus, by January, 1987, California Union was aware that a verdict for even the lesser amount would pierce its layer of coverage. Incidentally, California Union never replied to this report and never indicated to Ortelere that it was interested in settling the matter.

In March, 1987 Bidermann moved for summary judgment. The court granted the motion as to liability, but reserved decision on damages pending a hearing. Ortelere and Berkman met during the oral argument for the summary judgment motion, at which point they discussed the claim and Bidermann's settlement demands. Ultimately, a judgment in the amount of $315,-734.04 was entered on the referee's report as to damage. This exhausted California Union's coverage.

Robert Rees, a claims manager for California Union, testified that he was kept aware of the litigation's developments through reports from Hahn. Furthermore, having been present at the argument of the motion, and knowing full well that a deci-

sion was imminent, Ortelere, the monitor, never called Berkman to find out the disposition by the court.

California Union claims that Excess acted in bad faith in not settling the case for $116,000 in December, 1984 or for approximately $220,000 in 1987, particularly after summary judgment had been granted in June of that year.

■ Under New York law a primary insurer owes the excess insurer the same duty of good faith that it owes to its insured. *Hartford Accident & Indemnity Co., v. Michigan Mutual Insurance Co.,* 93 A.D.2d 337, 340, 462 N.Y.S.2d 175 (1st Dep't 1983). In the context of settlements this duty obligates an insurer to attempt to settle a claim where liability is clear and the potential for recovery far exceeds the primary coverage limit. *Young v. American Casualty Co.,* 416 F.2d 906, 910 (2d Cir.1969); *DiBlasi v. Aetna,* 147 A.D.2d 93, 542 N.Y.S.2d 187, 191 (2d Dep't 1989); Insurance Law § 2601(a)(4) (McKinney's 1985).

■ In light of these principles, California Union's assertion that Excess acted in bad faith when it failed to accept the settlement demand of $116,000 in December 1984, is without merit. Since no discovery had been had at that time and the complaint had not even been filed by Bidermann, Shipside's liability was not yet clear to Excess and thus "bad faith may not possibly be inferred from [Excess's] failure to settle ... at that early and indecisive stage of the litigation." *Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 334 N.Y.S.2d 601, 607, 285 N.E.2d 849, 853 (1972), *cert. den.* 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973). Furthermore, California Union never replied to the letter of December 6, 1984, stating that counsel for Excess was proceeding to trial.

■ California Union's claim in regard to Excess's refusal to accept the later demands of $222,000 is also without merit. Even when liability is clear, a primary insurer's rejection of a settlement demand in excess of its policy coverage only constitutes bad faith if the insurer fails to make any attempt to engage the plaintiff's counsel in discussions to reduce the initial demand *and* it fails to inform its insured or the excess carrier of this demand. *Young, supra,* 416 F.2d at 910.

In the instant case although Excess clearly did not make any counter offers to Bidermann, the proof not only shows that California Union had notice of Bidermann's settlement demands, but also of the fact that Excess's counsel was going to proceed to trial. Its own monitor kept it advised through the argument of the summary judgment motion, and even offered suggestions as to the value of the claim. The failure of the monitor to keep abreast of subsequent developments cannot be ignored.

■ However, California Union contends that even when the excess insurer has knowledge of the developments in a litigation, a primary insurer still has a duty to either make a counter offer to the plaintiff or to explicitly inform the excess carrier that it is relinquishing control of the case in the excess's favor. The court disagrees.

No court in this state has decided whether an excess carrier may bring an action for bad faith against a primary carrier when the excess carrier knew of the latter's refusal to settle and did not object. However, I believe that a New York court would follow the trend in other jurisdictions which bar suits where the insured or excess insurer, having hired counsel to monitor the primary insurer's handling of the litigation, does not object to the primary insurer's conduct of the matter. *See, e.g., McNally v. Nationwide Ins. Co.,* 815 F.2d 254, 260 (3d Cir.1987) (construing Delaware law); *Puritan Ins. Co. v. Canadian Universal Ins. Co.,* 775 F.2d 76, 81 (3d Cir.1985) (construing Pennsylvania law) ("When an insured—fully aware of [the excess] exposure—decides that his interests are better served by going to trial, a finding of bad faith on the part of the carrier is highly unlikely."); *Continental Cas. Co. v. Pullman,* 709 F.Supp. 44, 48 (D.Conn.1989).

What the court stated in *Continental, supra,* certainly holds true here as well,

[t]o the extent the excess insurer considered itself at risk in the state court suit, it could have retained counsel to monitor the litigation and to protect its interests. Continental is hardly a neophyte in these matters; what it asks this unwilling court to do is to sanction a procedure whereby an excess carrier can remain silent yet challenge the defense and strategy in the face of an adverse judgment. Equity does not mandate such a result.

709 F.Supp. at 48.

California Union also urges as an indication of bad faith that Excess has failed to prosecute its cross-claim against McRoberts in the original suit brought by Bidermann. However, I find that the suit is still pending in the Supreme Court.

The plaintiff's claim is dismissed.

So ordered.