**NEW ENGLAND INSURANCE CO., Plaintiff,**

v.

**HEALTHCARE UNDERWRITERS MUTUAL INSURANCE COMPANY f/k/a Hospital Underwriters Mutual Insurance Company and Hospital Underwriters Mutual Insurance Company, Defendant.**

**No. 98–CV–2234 (ADS).**

United States District Court, E.D. New York.

Sept. 4, 2004.

Rivkin, Radler LLP by Evan H. Krinick, Esq. and Michael P. Versichelli, Esq., Uniondale, NY, for Plaintiff.

McAloon & Friedman, PC by Lawrence W. Mumm, Esq., Gillian Fisher, Esq. and Timothy J. O'Shaughnessy, Esq., New York City, for Defendant.

## ORDER

SPATT, District Judge.

In what may be a novel ruling, the Court must determine the date from which prejudgment interest is computed pursuant to New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") § 5001 in an insurance "bad faith" action when the underlying medical malpractice action was settled and no judgment was entered.

On December 20, 2000, a jury returned a verdict in favor of the plaintiff New England Insurance Company ("New England" or the "plaintiff") and against the defendant Healthcare Underwriters Mutual Insurance Company ("Healthcare" or the "defendant") based on its "bad faith" refusal to settle a medical malpractice case against the insured of the defendant and the plaintiff. Damages were stipulated at $1,100,000.

On June 26, 2001, the Court set aside the jury verdict in favor of the plaintiff and granted the defendant's motion for judgment as a matter of law. *See New England Ins. Co. v. Healthcare Underwriters Mut. Ins.*, 146 F.Supp.2d 280 (E.D.N.Y. 2001). On July 8, 2002, the Second Circuit reversed the entry of judgment in favor of the defendant and instructed the Court to enter judgment in favor of the plaintiff in accordance with the jury's verdict. *See New England Ins. Co. v. Healthcare Underwriters Mutual Ins. Co.*, 295 F.3d 232, 249 n. 30 (2d Cir.2002). In a footnote, the Second Circuit further instructed the Court

to award to New England prejudgment interest at the New York State rate of 9% from December 20, 2000 (the date of the [federal] jury verdict) to June 29, 2001 (the date of the [federal] judgment in favor of Healthcare). The district court is instructed to award post-

judgment interest at the federal rate thereafter.

*Id.* at 249 n. 30 (2d Cir.2002). In accordance with this directive, by Order dated October 5, 2002, the Court ordered that judgment be entered

> in favor of the plaintiff and against the defendant in the sum of $1,100,000 with prejudgment interest at the rate of 9% from December 20, 2000 to June 29, 2001 and with postjudgment interest at the rate of 3.46% from June 30, 2001 until the defendant pays the judgment together with costs in the sum of $15,206.12.

The Court did not award interest for the period of time preceding the federal jury verdict. On December 15, 2003, the Second Circuit vacated the October 5, 2002 judgment because the Court did not award "interest for the period between the state-court jury verdict or settlement and the federal-court jury verdict." *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.,* 352 F.3d 599, 602 (2d Cir.2003). As such, the Second Circuit remanded the action to the Court "to grant the plaintiff, in addition to the jury award and post-JMOL interest, an appropriate award of interest for the period preceding the federal JMOL under New York State law." *Id.* at 601.

Thereafter the parties each submitted proposed judgments purportedly in accordance with the Second Circuit's mandate. These proposed judgments are identical in every respect except with regard to the date at which the prejudgment interest should commence. In particular, the plaintiff contends that it is entitled to interest from September 1, 1992, the date of the verdict in the underlying malpractice action, to December 20, 2000, the date of the federal jury verdict. On the other hand, the defendant argues that the plaintiff is entitled to prejudgment interest from April 14, 1993, the date of the settlement agreement in the underlying malpractice action and plaintiff's payment of $1.1 million to the insured, to December 20, 2000.

■ Prejudgment interest is a matter of substantive New York law. *Terwilliger v. Terwilliger,* 206 F.3d 240, 249 (2d Cir. 2000). Prejudgment interest "shall be computed from the earliest ascertainable date the cause of action existed...." N.Y. C.P.L.R. § 5001(b). In this regard, in insurance "bad faith" actions, pre-judgment interest runs "from the date of the underlying judgment to the date of the verdict in the bad faith action." *DiBlasi v. Aetna,* 147 A.D.2d 93, 100, 542 N.Y.S.2d 187 (2d Dep't 1989) (citing N.Y. C.P.L.R. § 5003). Such is the case because in insurance "bad faith" cases "liability is imposed by a judgment entered against insured because it is not until that date that liability in excess of the policy limits is imposed on the insured." 2B Carmody–Wait 2d § 13:228 (2004) (citing *Roldan v. Allstate Ins. Co.,* 149 A.D.2d 20, 544 N.Y.S.2d 359 (2d Dep't 1989)).

Relying on *DiBlasi,* the plaintiff argues that because no tort judgment was entered due to the settlement of the underlying state court case it should receive prejudgment interest from September 1, 1992 because its cause of action accrued "at the moment that the underlying verdict ... in the *Weinstock* case was reached, which wrongfully exposed New England to liability due to [the defendant's] bad faith conduct." Letter from Krinick to Court of 1/27/04 at 1. The Court disagrees and notes that the plaintiff fails to cite any authority for its proposition that the verdict in the underlying malpractice case, that was subsequently settled without the entry of a judgment, was equivalent to a judgment.

■ As stated above, a cause of action for an insurance "bad faith" case accrues when "liability" is imposed on the insured, namely when the excess judgment against the insured is entered. *See Henegan, et al. v. Merchants Mut. Ins. Co.*, 31 A.D.2d 12, 13, 294 N.Y.S.2d 547 (1st Dep't 1968) ("Reason as well as economic fact dictates that the mere existence of an excess final judgment causes harm to the judgment debtor. The judgment increases his debts, it damages his credit, it subjects his property to the lien of the ubiquitous judgment."); *see also* New York Pattern Jury Instructions—Civil, PJI § 4:67 (2003) ("Damage is an essential of the action, but damage results from the judgment in excess of the policy limit, which increases the insured's debts, impairs his credit and subjects his property to the lien of the judgment." (citations omitted)). Indeed, in an insurance "bad faith action"

[t]he plaintiff is entitled to interest for its loss of the ascertained sum. The recoverable interest runs from the fixed date on which the plaintiff can be shown to have first lost the use of its money. From that date to the date of the plaintiff's judgment is the period over which prejudgment interest operates:

The basic consideration is that the defendant had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.

Litig. & Prev. Ins. Bad Faith 2d § 13:11 (2004) (internal quotations and citations omitted).

■ Thus, In a case, such as this, where no judgment was entered because of a settlement, "liability" was imposed on April 14, 1993, the date the settlement obligated the plaintiff to pay $1.1 million in excess coverage which the plaintiff paid that day. Again, the Court notes that the September 1, 1992 jury verdict, without a following judgment, did not obligate the plaintiff to pay any money. Because the plaintiff's cause of action accrued on April 14, 1993, pursuant to C.P.L.R. § 5001(b), prejudgment interest must be calculated from April 14, 1993.

The Court's decision that pre-judgment interest runs from April 14, 1993, the date of the state court settlement and the date that the plaintiff actually paid the $1.1 million, is supported by the "long-standing recognition that the purpose of awarding interest is to make an aggrieved party whole." *Spodek v. Park Property Development Assocs.*, 96 N.Y.2d 577, 581, 733 N.Y.S.2d 674, 759 N.E.2d 760 (2001) (quoting *Prager v. New Jersey Fid. & Plate Glass Ins. Co.*, 245 N.Y. 1, 5–6, 156 N.E. 76 (Cardozo, C.J.) (1927) ("While the dispute as to value was going on, the defendant had the benefit of the money, and the plaintiff was without it. Interest must be added if we are to make the plaintiff whole...")); *Lesjac Realty Corp. v. Mulhauser*, 43 Misc.2d 439, 251 N.Y.S.2d 62 (1964) (the award of interest is founded solely on theory that there has been a deprivation of use of money or its equivalent, and that unless interest be added, the party aggrieved is not made whole.). Similarly, the Second Circuit has stated that "[t]he purpose of a prejudgment interest award ... is to compensate a plaintiff for the loss of use of money...." *Chandler v. Bombardier, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994).

Until April 14, 1993, the plaintiff enjoyed the use of the $1.1 million and presumably used the money to its benefit. To allow the plaintiff to again benefit by collecting interest on the $1.1 million from September 1, 1992 to April 14, 1993, when it had

full use of this money, would be contrary to law and to the underlying policy of pre-judgment interest. Accordingly, as stated above, the Court will award prejudgment interest at the rate of 9% from April 14, 1993 to December 20, 2000, in addition to the other interest awards.

Based on the foregoing it is hereby

**ORDERED**, that the Clerk of the Court enter judgment in favor of plaintiff, New England Insurance Co., and against defendant, Healthcare Underwriters Mutual Insurance Company f/k/a Hospital Underwriters Mutual Insurances Company and Hospital Underwriters Mutual Insurance Company, in the sum of $1,100,000.00, plus pre-judgment interest at the rate of 9% from April 14, 1993 to December 20, 2000 in the amount of $761,350.69, plus pre-judgment interest at the rate of 9% from December 20, 2000 to June 29, 2001 in the amount of $51,805.48, for a total sum of $1,913,156.17, plus post-judgment interest at the rate of 3.46% from June 30, 2001 until the defendant pays the judgment, plus costs in the sum of $16,737.32.

**SO ORDERED.**