CELIA ROLDAN, Respondent, v ALLSTATE INSURANCE COMPANY, Appellant.

Second Department, July 3, 1989

APPEARANCES OF COUNSEL

*Pizzitola & Di Blasi, P. C. (Vincent A. Di Blasi* and *Lawrence B. Lame* on the brief), for appellant.

*Paul S. Mirman, P. C. (Michele Turchin* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J.

■■ Where an insurer, acting in bad faith, refuses to settle an underlying personal injury action against its insured for a sum within the limits of its policy, and where, as a result, the insured is exposed to liability in excess of the policy limits, then a cause of action in favor of the insured and against the insurer may arise *(see, e.g., Kulak v Nationwide Mut. Ins. Co.,* 40 NY2d 140; *Knobloch v Royal Globe Ins. Co.,* 38 NY2d 471; *Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427; *DiBlasi v Aetna Life & Cas. Ins. Co.,* 147 AD2d 93; 70 NY Jur 2d, Insurance, § 1661 *et seq.).* In the present case, we are presented with various issues concerning (1) when such a cause of action accrues, (2) what Statute of Limitations applies, and (3) whether the running of the Statute of Limitations is tolled for that period of time during which a judgment in the underlying action is erroneously vacated. We conclude that such a toll applies. This appeal also brings up the question of whether punitive damages, that is, damages in a sum exceeding the amount of the underlying judgment against the insured, may be awarded. We hold that punitive damages are not available.

## I

According to the plaintiff's complaint, at some time prior to September 29, 1976, the defendant Allstate Insurance Company (hereinafter Allstate) had issued an automobile liability policy to its insured, Dudley Thorpe. The plaintiff further alleges that on that day she was struck by Mr. Thorpe's vehicle and physically injured. The plaintiff asserts that, despite Mr. Thorpe's fulfillment of all of his contractual obligations, Allstate wrongfully refused to honor its contractual duty to defend and indemnify him in connection with the personal injury action subsequently brought by the plaintiff in the Supreme Court, Kings County. As a result of the defendant's refusal to provide a legal defense for its insured, it is alleged that the underlying personal injury action culminated

in the entry, after an inquest, of a default judgment for $253,045.

The plaintiff's complaint contains five causes of action, four of which are asserted by her as assignee of Mr. Thorpe's cause of action against Allstate. First, the plaintiff claims that she is entitled to the full amount of "the unpaid plaintiff's judgment for which the insured DUDLEY THORPE is liable". The second cause of action is based on allegations that Allstate had acted wrongfully "in purportedly terminating DUDLEY THORPE's insurance policy" and in refusing to comply with an arbitration award (subsequently confirmed by the Supreme Court) which declared that insurance coverage was in effect on the date of the accident.[1] In the third cause of action it is alleged that Allstate wrongfully rebuffed several offers to settle the underlying personal injury action within the monetary limits of its policy, in violation of Allstate's alleged "absolute duty" to accept such an offer. The fourth cause of action is based on allegations of fraud and contains a demand for punitive damages. The fifth cause of action appears to have been brought in the name of the plaintiff in her individual capacity as the person allegedly injured as a result of Thorpe's negligence (see, Insurance Law § 3420 [a] [2]) rather than in her capacity as an assignee of Thorpe's causes of action against Allstate.

Following the service of an answer, Allstate moved to dismiss the complaint by virtue of several defenses including its seventh affirmative defense, which is based upon the alleged expiration of the Statute of Limitations (CPLR 3211 [a] [5]). Allstate's attorney argued, in support of this application, that the plaintiff's cause of action had accrued on November 9, 1979, when the default judgment in the underlying personal injury action against Thorpe was entered. Allstate's attorney also argued that the present action was commenced on December 5, 1986, when a copy of the summons and complaint was

---

1. The subject arbitration award was made in connection with the plaintiff's application for reimbursement for medical expenses and attorneys' fees pursuant to New York's Comprehensive Motor Vehicle Insurance Reparations Act (Insurance Law art 51). Pursuant to that law, if Allstate's policy was in effect on the date of the accident, then Allstate would be obligated to reimburse the plaintiff for the "basic economic loss" she suffered (see, Insurance Law § 5102 [a], [b], [j]; § 5103 [a]). The "no-fault" arbitrator determined that coverage was in effect because Allstate's prior notice of cancellation of coverage had been defective. This arbitration award was confirmed by judgment of the Supreme Court, Kings County, dated March 1, 1979.

served on the Superintendent of Insurance. Assuming the applicability of the six-year Statute of Limitations (CPLR 213 [2]), Allstate contended that since the complaint had been interposed more than seven years following the accrual of the claims asserted therein, it should be dismissed as time barred.

In an affirmation in opposition, the attorney for the plaintiff pointed out that in September of 1982 almost three years after the default judgment had been entered, Allstate made a motion to vacate the judgment on the basis that the Supreme Court, in the underlying personal injury action, had lacked personal jurisdiction over its insured Dudley Thorpe *(see,* CPLR 5015 [a] [4]). The Supreme Court, after a hearing, in an order dated September 20, 1984, granted this motion, vacated the default judgment and dismissed the underlying personal injury complaint. That order, however, was reversed by this court on February 24, 1986.[2] A motion for leave to appeal from the order of this court was dismissed by the Court of Appeals on June 10, 1986 *(see, Roldan v Thorpe,* 68 NY2d 663). The attorney for the plaintiff argued that Allstate's breach of its contractual duty to its insured continued until June 10, 1986, when the Court of Appeals refused to grant leave to appeal, and that it was not until that day that the plaintiff's causes of action accrued.

In denying the defendant's motion, the court, relying upon the case of *Colpan Realty Corp. v Great Am. Ins. Co.* (83 Misc 2d 730), determined that Allstate's breach of its duty to its insured was a continuing one, and that "[e]ach refusal of the defendant-insurer to defend plaintiff in that action constituted a new breach of its insurance contract". The court also reasoned that the right of action possessed by Mr. Thorpe, which was assigned to the plaintiff, was essentially extinguished when the default judgment in the underlying action was vacated on September 20, 1984. For these reasons, the court concluded that the instant action was not time barred.

## II

In deciding whether a particular claim is time barred, the

---

2. The Supreme Court had determined that the summons and complaint in the underlying action had not been properly served on Mr. Thorpe pursuant to the terms of CPLR 308 (2). This court upheld the Supreme Court's findings of fact, but reversed its order on the law, holding that the manner of service of the summons and complaint in the underlying action did comply with CPLR 308 (2) *(see, Roldan v Thorpe,* 117 AD2d 790).

court must examine at least four questions: (1) When did the plaintiff's cause of action accrue *(see,* CPLR 203 [a])? (2) What prescriptive period applies? (3) When did the plaintiff interpose his claim *(see,* CPLR 203 [b])? (4) Was the running of the prescriptive period suspended or tolled for any reason?

In this case, the third question presents no difficulty since the parties do not dispute that the plaintiff's claims were interposed on or about December 5, 1986, when the summons and complaint were delivered to the Superintendent of Insurance. The remaining questions will be discussed, first, as they relate to those causes of action which are asserted by the plaintiff as assignee of Mr. Thorpe, and, second, as they relate to the plaintiff's cause of action brought in her individual capacity pursuant to Insurance Law § 3420 (a) (2).

## A

While the question of when a cause of action accrues often proves to be difficult in particular applications, it is governed, in theory, by a simple principle: "A cause of action does not accrue until its enforcement becomes possible" *(Jacobus v Colgate,* 217 NY 235, 245). In other words, a particular cause of action accrues as soon as a claimant is able to state the elements of that cause of action, and hence, to assert a valid right to some sort of legal relief *(e.g., City of New York v State of New York,* 40 NY2d 659, 668; *Matter of City of White Plains v City of New York,* 63 AD2d 396, 402-403; *Ryan Ready Mixed Concrete Corp. v Coons,* 25 AD2d 530; 36 NY Jur, Limitations and Laches, § 60). It would seem to be a logical corollary to this rule that the Statute of Limitations may not begin to run before all the elements of a cause of action may truthfully be alleged, nor may it continue to run for any period of time during which an element of the cause of action can no longer be truthfully alleged *(cf., Homer Eng'g Co. v State of New York,* 12 NY2d 508, 510-511).

In determining when the causes of action asserted in the plaintiff's complaint in the present case accrued, it is necessary, initially, to determine the substance of those causes of action. In her capacity as an assignee of Mr. Thorpe, the plaintiff seeks a money judgment against Allstate which would reflect (1) the amount of money which Allstate allegedly owes to Mr. Thorpe, its insured, pursuant to its contractual obligation to indemnify him against liability for bodily injury, subject to a limit of $10,000, and (2) the additional amount of

money which Allstate allegedly owes to Mr. Thorpe as a result of its "bad faith" refusal to settle the underlying litigation.

■ The cause of action based upon Allstate's alleged breach of its contractual duty to indemnify its insured against liability for bodily injury did not accrue until the liability was imposed. In this respect, a standard automobile liability insurance policy is more in the nature of an agreement to indemnify the insured against liability, rather than an agreement to indemnify only against actual loss or damage, so that it is breached as soon as the liability is imposed upon the insured, rather than when the insured actually pays the judgment in the underlying action (see generally, Bay Ridge Air Rights v State of New York, 44 NY2d 49, 54; Cubito v Kreisberg, 69 AD2d 738, 746, affd 51 NY2d 900; Musco v Conte, 22 AD2d 121, 125-126 [cause of action for common-law indemnification accrues when indemnitee pays underlying judgment]; cf., 755 Seventh Ave. Corp. v Carroll, 266 NY 157, 161; In re National Sur. Co. [Great Am. Indem. Co.], 29 NYS2d 1011, affd 261 App Div 811, affd 286 NY 611; Hobbs v Scorse, 59 AD2d 1037; Corbetta Constr. Co. v Driscoll Co., 17 AD2d 176, 180; 23 NY Jur 2d, Contribution, Indemnity and Subrogation, § 66 [cause of action based on agreement to indemnify against liability accrues when liability is imposed]). Liability was first imposed on Allstate's insured on or about November 9, 1979, when a judgment for $253,045 was entered against him in the Supreme Court, Kings County.

■ Similarly, we are of the opinion that the plaintiff's cause of action against Allstate based on its alleged "bad faith" also accrued on November 9, 1979, because it was not until that date that liability in excess of the policy limits was imposed upon Allstate's insured. It has been held that a cause of action alleging "bad faith" may be brought against an insurance company before the judgment in excess of the policy limits is actually paid (see, Henegan v Merchants Mut. Ins. Co., 31 AD2d 12; Gordon v Nationwide Mut. Ins. Co., 37 AD2d 265, 270, revd on other grounds 30 NY2d 427, supra; Levantino v Insurance Co., 102 Misc 2d 77, 82-84; Gregersen v Aetna Cas. & Sur. Co., 241 F Supp 204 [NY law]; 70 NY Jur 2d, Insurance, § 1664). This appears to be the rule which prevails in a majority of American jurisdictions (see, e.g., Farmers Ins. Exch. v Schropp, 222 Kan 612, 567 P2d 1359; Lange v Fidelity & Cas. Co., 290 Minn 61, 185 NW2d 881; Hernandez v Great Am. Ins. Co., 464 SW2d 91 [Tex]; Henke v Iowa Home Mut. Cas. Co., 250 Iowa 1123, 97 NW2d 168; Smoot v State Farm

*Mut. Auto. Ins. Co.,* 299 F2d 525 [5th Cir, applying Ga law]; *Gaskill v Preferred Risk Mut. Ins. Co.,* 251 F Supp 66, *affd* 371 F2d 792 [4th Cir, applying Md law]; *American Fire & Cas. Co. v Davis,* 146 So 2d 615 [Fla App]; *see also,* Annotation, Liability Insurer's Failure to Settle, 63 ALR3d 627).

There are several cases from other jurisdictions which could be read as holding that a cause of action to recover damages for bad faith refusal to settle accrues not when the excess judgment is first entered, but rather, when it becomes absolutely final, that is, when all the appellate remedies have been exhausted *(see, e.g., Romano v American Cas. Co.,* 834 F2d 968, 969-970 [11th Cir]; *Boyd Bros. Transp. Co. v Fireman's Fund Ins. Cos.,* 540 F Supp 579, *affd* 729 F2d 1407 [11th Cir]; *Bush v Safeco Ins. Co.,* 23 Wash App 327, 596 P2d 1357, 1358; *American Mut. Liab. Ins. Co. v Cooper,* 61 F2d 446, 448). From a practical standpoint, such an approach may appear well founded, since it renders premature, and thus subject to dismissal or stay, any "bad faith" action brought during the pendency of an appeal from the judgment in the underlying action, so as to avoid the possibility of "the insurer being held liable for bad faith * * * even though its insured might later be found [on the appeal from the underlying judgment] not liable in the underlying tort action" *(Fortson v St. Paul Fire & Mar. Ins. Co.,* 751 F2d 1157, 1161 [11th Cir]; *Romano v American Cas. Co., supra).*

In the present case, however, the underlying judgment was entered upon default, and there existed no right to appellate review under New York law *(see,* CPLR 5511; *Norton & Siegel v Nolan,* 276 NY 392, 394; *see also, Tongue v Tongue,* 97 AD2d 638, *affd* 61 NY2d 809). We therefore need not decide whether, as a general rule, a cause of action alleging bad faith accrues not when the underlying judgment in excess of the policy amount is entered, but rather when appellate review of it is exhausted.[3]

---

3. We would note, however, that it is questionable whether the practical considerations expressed in the *Romano* (834 F2d 968) and *Fortson* (751 F2d 1157) cases warrant a holding, as a matter of law, that the accrual of a bad-faith cause of action occurs not when excess liability is imposed, but rather when appellate review of the judgment imposing such liability is exhausted. Since a judgment of the Supreme Court should certainly be afforded a presumption of validity, the basic fact remains that, once the judgment in excess of the policy limits is entered, the insured's cause of action against his insurer has accrued. The possibility of a reversal of the judgment in the underlying action on appeal is not an absolute impediment to the insured's

In this respect, it is important to note a distinction between those bad-faith causes of action which are based upon an insurer's alleged breach of its duty to indemnify, or based upon its refusal to settle within its policy limits, on the one hand, and bad-faith causes of action which are based on allegations of an insurer's breach of its duty to defend, on the other hand. Pursuant to the principles outlined above, it could be argued that a cause of action based upon an insurer's breach of its duty to defend accrues only when such duty no longer exists. Thus, if it were assumed that the insurer's duty to defend its insured included a duty to exhaust all appellate remedies, then a cause of action based on a breach of that duty would accrue only when all appellate remedies were exhausted. This is, in fact, the holding of the court in *Colpan Realty Corp. v Great Am. Ins. Co.* (83 Misc 2d 730, *supra*), the case relied upon by the Supreme Court in reaching the determination under review.

The action in the *Colpan* case *(supra)* was brought by an insured to recover the attorneys' fees it had expended in its own defense. Holding that the insurer's duty to the defendant included a duty to prosecute an appeal *(Colpan Realty Corp. v Great Am. Ins. Co., supra,* at 732, citing *Kaste v Hartford Acc. & Indem. Co.,* 5 AD2d 203; *see also, Cornwell v Safeco Ins. Co.,* 42 AD2d 127, 138), the court concluded that the insurer's breach of its duty to defend was not complete until all appellate remedies in the underlying action had been exhausted. Other courts seem to have adopted a similar rationale, holding that a cause of action based on an insurer's breach of its duty to defend accrues when the underlying litigation is terminated, rather than when the insurer, for the first time, refuses to undertake the insured's defense *(see,* Annotation, *Insurer's Duty to Defend—Limitations,* 96 ALR3d 1193).[4]

---

ability to allege and prove a "bad faith" cause of action. The possibility of an insurer being subjected to a judgment sustaining the "bad faith" cause of action, the basis of which is later undermined by a reversal of the underlying judgment in excess of the policy amount, may be avoided by the simple expedient of staying the action based on the insurer's bad faith pending disposition of the appeal from the underlying judgment.

4. It seems to us more sound to hold that a cause of action based on a breach of the duty to defend accrues only upon the exhaustion of appellate review in the underlying action, than to hold that a cause of action based on a breach of the duty to indemnify accrues only at that late stage. This is so because the damages attributable to any breach of the duty to indemnify are ascertainable as soon as the judgment in the underlying action is entered, whereas the damages relating to a breach of the duty to defend—

The holding of the *Colpan* case *(supra)* does not apply here. In the present case, there is no demand for damages based upon Allstate's alleged breach of its duty to defend Mr. Thorpe. Apparently this is so because Mr. Thorpe incurred no actual expenses in any attempt to defend himself. In this case, we are dealing solely with a claimed breach of the duty to indemnify and a claimed violation of the duty to settle within the policy limits, and these causes of action accrued at the time of entry of the judgment in the underlying action.

The holding of *Colpan (supra)* is distinguishable for the further reason that the judgment in the underlying action in that case was the subject of direct review on appeal, whereas, in the present case, the judgment in the underlying action was the subject of collateral review pursuant to CPLR 5015. In some cases, there may be a duty on the part of an insurance carrier to pay for the costs of a postjudgment motion in connection with an underlying action against its insured, so that the refusal to make such a motion would constitute a breach of the carrier's duty to defend. However, the accrual of the insured's cause of action based on the insurer's breach of its duty to indemnify and based on the insurer's bad-faith refusal to settle may not be indefinitely postponed until the insurer makes a postjudgment motion. This is so particularly in view of the fact that a postjudgment motion made on the ground that the court in the underlying action lacked jurisdiction over the person of the insured may be made at any time *(see,* CPLR 5015 [a] [4]; *Matter of Doey v Howland Co.,* 224 NY 30, 38; *Matter of Roberts,* 19 AD2d 391, 396; *Wheelock v Wheelock,* 3 AD2d 25, 27, *affd* 4 NY2d 706; *see also,* 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5015.16; Siegel, NY Prac § 430, at 571).

We therefore reject the plaintiff's contention that the causes of action based on bad faith and contractual indemnification accrued on June 10, 1986, when the Court of Appeals refused to grant leave to appeal from the order of this court dated February 24, 1986, reinstating the default judgment against Mr. Thorpe. We hold, instead, that the plaintiff's causes of action accrued when the default judgment was entered on November 9, 1979.

i.e., the cost to the insured of defending itself *(see, e.g., United States Fid. & Guar. Co. v Copfer,* 48 NY2d 871, 873)—may not be ascertained until all of the underlying litigation, including any appeal—is terminated.

## B

■ The causes of action asserted by the plaintiff which are based upon (1) contractual indemnification, and (2) bad-faith refusal to settle, are governed by the six-year Statute of Limitations applicable to actions founded upon breach of contract *(see,* CPLR 213 [2]; *Town of Poland v Transamerica Ins. Co.,* 53 AD2d 140, 143; *see also, DiBlasi v Aetna Life & Cas. Ins. Co.,* 147 AD2d 93, *supra).* In this respect, New York law conforms to that of many other American jurisdictions which hold that a cause of action against an insurance carrier based on its bad-faith refusal to settle is governed by the Statute of Limitations applicable to actions based on contract, rather than on tort *(see, e.g., Comunale v Traders & Gen. Ins. Co.,* 50 Cal 2d 654, 328 P2d 198; *but see, Wolfe v Continental Cas. Co.,* 647 F2d 705 [6th Cir, applying Ohio law]; *see also,* Annotation, *Liability Insurer—Action—Limitation,* 68 ALR2d 892).

Measured in accordance with this standard, whatever legal remedies the plaintiff may have had based upon her cause of action to recover damages for indemnification and bad faith became time barred on November 9, 1985, six years after these causes of action had accrued. Since the present claims were interposed more than a year thereafter, it is clear that they are time barred unless some statutory or common-law tolling provision applies. This brings us to the central question in this case.

## C

The most troublesome question presented is whether the running of the Statute of Limitations was suspended between September 20, 1984, when the Supreme Court vacated the default judgment against Mr. Thorpe, and February 24, 1986, when this court reversed that order and reinstated the judgment. If the running of the Statute of Limitations was tolled for that period of approximately 17 months, then the plaintiff's causes of action for indemnification and bad faith were timely interposed.

■ The CPLR contains numerous tolling provisions *(see, e.g.,* CPLR 207 [defendant's absence from the State]; CPLR 208 [infancy, insanity, or imprisonment of plaintiff]; CPLR 209 [tolls relating to war]; CPLR 210 [death of claimant or of person liable]). No statutory tolling provision expressly applies to a case where a valid cause of action had accrued, but where

it was temporarily extinguished as a result of an erroneous court order, which was later reversed. In the instant case, so long as the Supreme Court order which vacated the default judgment against Mr. Thorpe was in effect, the plaintiff could not plead a cause of action for indemnification or to recover damages for bad-faith refusal to settle within the policy limits, because the judgment in the underlying action—a necessary predicate to those claims—was not in effect.

A statutory toll which provides a useful analogy, albeit not expressly controlling, is found in CPLR 204 (a). That section provides that "[w]here the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not part of the time within which the action must be commenced". There was, of course, no stay in effect which prohibited the plaintiff from bringing suit on a cause of action alleging bad faith between September 20, 1984, and February 24, 1986, nor was there a *statutory* prohibition against the plaintiff's bringing such an action. The impediment to the plaintiff's bringing such an action was more fundamental: her cause of action no longer existed because, on Allstate's motion, the Supreme Court had erroneously vacated the judgment in the underlying action, thus preventing her from pleading a necessary element of her cause of action.

The Court of Appeals has indicated that the "spirit" of the toll found in CPLR 204 (a) should be applied even in cases which are not covered by the letter of that statute. *Barchet v New York City Tr. Auth.* (20 NY2d 1) held that CPLR 204 (a) operated so as to provide a toll of the applicable one-year Statute of Limitations (Public Authorities Law § 1212) during the period of time when a claimant's motion for leave to serve a late notice of claim was pending. The court reasoned that, since the plaintiff could not properly state a cause of action until a notice of claim had been served, she should not be charged with the period of time that elapsed during the pendency of her motion for leave to serve a late notice of claim. The court stated that "[f]rom the date when she commenced the proceeding for leave to file a late notice of claim * * * until the order granting the relief requested appeared in the *New York Law Journal* * * * the plaintiff was prohibited from commencing her action and, by virtue of the provisions of CPLR 204 (subd. [a]), the Statute of Limitations was tolled for that period" *(Barchet v New York City Tr. Auth., supra,* at 7). As noted by the dissent *(Barchet v New York City Tr. Auth., supra,* at 8), this was so although there was no stay and

no statutory prohibition against the plaintiff commencing an action without having filed a notice of claim. The holding of the *Barchet* case is consistent with earlier cases *(see, e.g., Brehm v Mayor of City of N. Y.,* 104 NY 186, 190-191) and more recently has been reaffirmed *(see, Giblin v Nassau County Med. Center,* 61 NY2d 67; *cf., Serravillo v New York City Tr. Auth.,* 51 AD2d 1027, affd 42 NY2d 918).[5]

Also analogous is this court's decision in *Creswell v Doe* (22 AD2d 942). In that case, it was held that the provision of Insurance Law former § 618 (now § 5218) which required leave of the court before any suit could be brought against the Motor Vehicle Accident Indemnification Corporation, was, in effect, a "statutory prohibition" against bringing such suits. Thus, in *Creswell (supra),* this court held that the applicable Statute of Limitations is tolled until such leave is obtained *(cf., Matter of Velez v MVAIC,* 56 AD2d 764 [1st Dept, holding that such a toll covers only the period during which a motion for such leave is pending]; *see also, Wilson v MVAIC,* 44 Misc 2d 187).

The foregoing cases indicate that a measure of flexibility is to be employed in construing the tolling provision of CPLR 204 (a). As a matter of basic common sense, a plaintiff cannot be expected to commence an action while effectively precluded from pleading the necessary elements of his case.

The courts are not free to extend the Statute of Limitations *(see,* CPLR 201), and certainly may not invent tolling provisions simply because to do so might seem necessary in order to avoid results thought to be unfortunate in particular cases. However, not all tolling provisions are strictly statutory in origin; some tolls derive from common-law doctrines *(see,* Siegel, NY Prac § 50, at 51), so that to a concededly very limited extent, tolling provisions may be "Judge-made". The existence of the maxim *"contra non valentem agere nulla currit praescriptio"* ("no proscription runs against a person unable to bring an action") *(see,* Black's Law Dictionary 393 [4th ed 1951]) is proof of the antiquity of the concept that it is contrary both to fairness and to reason to permit the Statute of Limitations to run while a claimant is, through absolutely no fault of his own, unable to sue. Several cases illustrate,

---

**5.** Cases such as *Giblin* and *Barchet* must be distinguished from those which deal with other, more strictly interpreted statutes. For example, New York's wrongful death statute contains a prescriptive period which expressly runs from the death of the decedent *(see,* EPTL 5-4.1; *D'Andrea v Long Is. R. R. Co.,* 117 AD2d 10, 13-15, *affd* 70 NY2d 683).

moreover, that this common-law concept has become firmly imbedded in American law.

For example, *Braun v Sauerwein* (77 US 218, 223), stated that "[i]t seems, therefore, to be established, that the running of a statute of limitation may be suspended by causes not mentioned in the statute itself". The court in *Braun (supra),* relied upon its earlier precedent, including the case of *Hanger v Abbott* (73 US 532), in which it was held that the Statute of Limitations would be tolled for the period of time during which citizens of the loyal States were deprived of access to the courts of the States which had rebelled during the Civil War. Subsequent case law is replete with examples of tolls being recognized, apart from statutory provisions, where, for one reason or another, a plaintiff was, as the result of some extraordinary factor, unable to bring or continue his action *(see, e.g., Ayo v Johns-Manville Sales Corp.,* 771 F2d 902, 908 [5th Cir, La law]; *Davis v Wilson,* 349 F Supp 905 [ED Tenn]; *Wagner v New York, Ontario & W. Ry.,* 146 F Supp 926, 929 [MD Pa] [where flood prevented opening of court, preventing plaintiff from filing]; *Oerlikon Mach. Tool Works Buehrle & Co. v United States,* 102 F Supp 417 [Ct Cl] [where the plaintiff was prevented from suing because of its placement on list of blocked nationals under Trading with the Enemy Act]; *Middleton v Silverman,* 430 So 2d 981 [Fla App] [where court was closed due to civil disorder, preventing plaintiff from filing]; *Grant v Carroll,* 424 So 2d 389 [La App]; *Seamans v Walgren,* 82 Wash 2d 771, 514 P2d 166, 168 [where plaintiff could not commence action because the defendant, a member of State Legislature, was immune from service of process during legislative session]). "The broad rule is laid down that whenever some paramount authority prevents a person from exercising his legal remedy, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right even though the statute makes no specific exception in his favor in such cases" (51 Am Jur 2d, Limitation of Actions, § 140, at 711; *see also,* 54 CJS, Limitations of Actions, § 86, at 121-123).

It bears emphasis that the order vacating the judgment in the underlying action was made on the defendant Allstate's motion. Neither the plaintiff nor her assignor were instrumental in causing the court erroneously to vacate the judgment. We certainly do not fault Allstate or its attorneys for taking the steps they thought appropriate to defend Allstate's interest, but the fact remains that this court held on February 24,

1986, that Allstate's motion was without merit. Allstate must bear the responsibility exclusively for the order which deprived the plaintiff of her ability to assert her assigned's cause of action for approximately 17 months, and Allstate may not now argue that the Statute of Limitations continued to run against the plaintiff during that period. In this respect, the doctrine of equitable estoppel also figures in our decision today, for, as stated in *General Stencils v Chiappa* (18 NY2d 125, 128), "[o]ur courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing * * * which produced the long delay" *(see also, Matter of Steyer,* 70 NY2d 990, 993; *Simcuski v Saeli,* 44 NY2d 442, 448-449). Of course, Allstate's inducing the court to grant a motion to vacate the underlying judgment was not "wrongful" in a moral sense; however, it was "wrongful" in the sense that its argument lacked legal merit.

In conclusion, we hold, under the particular facts of this case, that the running of the Statute of Limitations with respect to the plaintiff's cause of action based on bad faith and for indemnification was suspended as soon as the Supreme Court, by erroneously granting Allstate's motion to vacate the judgment in the underlying action, in effect extinguished the plaintiff's causes of action at Allstate's behest. The running of the Statute of Limitations remained suspended until this court, in February 1986 reversed the order vacating the judgment in the underlying action, thereby reviving the plaintiff's causes of action. Because of this toll, we conclude that the plaintiff's causes of action for indemnification and bad-faith negotiation are not time barred.

## III

The plaintiff's first two causes of action alleging bad faith are asserted in her capacity as the assignee of Allstate's insured. The assignability of these causes of action is not disputed on appeal *(cf., Williams Paving Co. v United States Fid. & Guar. Co.,* 67 AD2d 827; *DiLallo v Fidelity & Cas. Co.,* 355 F Supp 519, 521-524 [SD NY]; *Oppel v Empire Mut. Ins. Co.,* 517 F Supp 1305, 1306 [SD NY] [holding that such causes of action are assignable under NY law]; *see also,* Annotation, *Insurer's Failure to Settle,* 12 ALR3d 1158).

The fifth cause of action is asserted by the plaintiff in her individual capacity as the party injured by Mr. Thorpe's

negligence. Pursuant to Insurance Law § 3420 (a) (2), Allstate's policy was required to contain: "(2) A provision that in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract".

In her brief on appeal, the plaintiff apparently concedes, in reliance on *Lumbermens Mut. Cas. Co. v North Riv. Ins. Co.* (110 Misc 2d 1014), that a three-year Statute of Limitations is applicable to a cause of action asserted by an injured party against the negligent party's insurer pursuant to Insurance Law § 3420. In the *Lumbermens* case *(supra)*, the court held that such a cause of action was created by statute, so that the three-year limitation period contained in CPLR 214 (2) applies.

■ We do not pass on the question of what Statute of Limitations applies to a direct cause of action pursuant to Insurance Law § 3420 (a) (2) because, irrespective of which Statute of Limitations applies, the present record does not reveal when the direct cause of action asserted by the plaintiff in this case accrued. Pursuant to Insurance Law § 3420 (a) (2), such a cause of action does not accrue until 30 days after a copy of notice of entry of the judgment in the underlying personal injury action is served on both the insured (or his attorney) and the insurer *(see, Thrasher v United States Liab. Ins. Co.,* 19 NY2d 159, 166-167; *Manshul Constr. Corp. v State Ins. Fund,* 118 AD2d 983, 984-985; *Lumbermens Mut. Cas. Co. v North Riv. Ins. Co., supra,* at 1015). The present record does not reveal when Mr. Thorpe was served with notice of entry of the judgment in the underlying action, and it does not reveal when Allstate was served.

Since it is possible that the fifth cause of action is time barred, and since the deficiency in the record in this respect, we presume, may be easily cured, Allstate should be granted leave to renew so much of its motion as was to dismiss the plaintiff's fifth cause of action.

IV

Allstate also requested dismissal of several causes of action on the grounds that the allegations contained therein were legally insufficient (CPLR 3211 [a] [7]). Its motion in this respect is founded primarily on its assertion that no valid cause of action based on allegations of a bad-faith refusal to settle exists unless there is "an extraordinary showing of a disingenuous or dishonest failure to carry out a contract" *(Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 437; *Guarantee Ins. Co. v City of Long Beach,* 106 AD2d 428, 429). This assertion is correct. In order to succeed, a plaintiff must show more than mere negligence on the part of the insurer; a bona fide error by the insurer in assessing the exposure of its insured is not sufficient *(see generally, Best Bldg. Co. v Employers' Liab. Assur. Corp.,* 247 NY 451; *Gordon v Nationwide Mut. Ins. Co., supra; DiBlasi v Aetna Life & Cas. Ins. Co., supra;* 70 NY Jur 2d, Insurance, §§ 1662, 1663). As noted by this court in *Guarantee Ins. Co. v City of Long Beach (supra),* it is necessary for the plaintiff to prove that the rejection by the insurer of an offer of settlement within its policy limits constituted a deliberate, or at least reckless, decision to disregard the interests of its insured.

The flaw in Allstate's argument is not with respect to its description of the burden of proof to which the plaintiff will ultimately be held; rather the flaw is in the attempt to apply that burden of proof at this early stage. Allstate's motion is addressed solely to the adequacy of the pleadings; the motion was made pursuant to CPLR 3211, not CPLR 3212, and so the plaintiff was not put to her proof. The courts justifiably have been reluctant to dismiss claims similar to the present one because of alleged deficiencies in the pleadings. In *Reifenstein v Allstate Ins. Co.* (92 AD2d 715, 716) the Appellate Division, Fourth Department, stated the following: "The allegations are sufficient to indicate the existence of a cause of action for bad-faith refusal to settle. Where it is alleged that an insured lost an actual opportunity to settle the negligence claim against him within the coverage limits of his policy by reason of the insurer's purported 'bad faith,' he states a cause of action against the insurer to recover the excess judgment (see *United States Fid. & Guar. Co. v Copfer,* 48 NY2d 871, 873; *Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 436-437, cert den 410 US 931). Bad faith ' "is generally proven by evidence largely circumstantial in nature" ' *(Kulak v Nationwide Mut. Ins.*

*Co.,* 47 AD2d 418, 420, rev on other grounds 40 NY2d 140) and involves many factors and considerations. Consequently, courts have been reluctant to dismiss complaints alleging bad faith at the pretrial stage (see *Decker v Amalgamated Mut. Cas. Ins. Co.,* 35 NY2d 950, 952-953; *Union Sta. Rest. v North Amer. Co. for Prop. & Cas. Ins.,* 59 AD2d 270, 276-277; *Town of Poland v Transamerica Ins. Co.,* 53 AD2d 140, 145-146)".

We therefore conclude that the plaintiff's first two causes of action, both of which are based on allegations of Allstate's bad-faith refusal to defend or indemnify its insured, and Allstate's bad-faith refusal to settle, should not be dismissed on the pleadings alone (CPLR 3211 [a] [7]).

V

Allstate also argues that the plaintiff's fourth cause of action should be dismissed pursuant to CPLR 3211 (a) (7). As previously noted, this cause of action seems based in fraud, and contains allegations that Allstate issued its automobile liability policy to Mr. Thorpe, even though it never intended to honor the covenants contained in that policy. Additional allegations are to the effect that Allstate's representatives made intentional misrepresentations of fact to Mr. Thorpe, and that Mr. Thorpe justifiably relied on those misrepresentations in obtaining an insurance policy from Allstate.

In the Supreme Court and on appeal, Allstate's arguments concerning the legal sufficiency of the allegations of the plaintiff's fourth cause of action are premised on the assertion that it represents a separate cause of action based solely on a demand for punitive damages. A demand for punitive damages does not itself constitute a separate legal theory upon which relief may be sought, nor can a claim for punitive damages be stated as a separate cause of action *(see, Ferrucci v State of New York,* 42 AD2d 359, 362, *affd* 34 NY2d 881; *APS Food Sys. v Ward Foods,* 70 AD2d 483, 488). However, the fourth cause of action does not consist of a claim for punitive damages alone; rather, it consists of eight paragraphs which purport to state a cause of action sounding in fraud. Allstate's argument that this cause of action should be dismissed on the basis that it constitutes a claim for punitive damages alone is therefore meritless.

Allstate's failure to view this particular cause of action as one sounding in fraud is understandable, since the allegations set forth do not provide a model of clarity. Allstate's apparent

misapprehension of the nature of this claim may well account for its failure in the Supreme Court to raise any argument specifically premised on the Statute of Limitations applicable to causes of action sounding in fraud. The plaintiff's fourth cause of action, to the extent that it is based on allegations of actual fraud, accrued when Allstate's alleged deception was or should have been discovered by its insured (see, CPLR 213 [8]; 203 [f]; *Quadrozzi Concrete Corp. v Mastroianni*, 56 AD2d 353, 355-356; see also, *Fava v Kaufman*, 124 AD2d 42, 44). Thus, the date of accrual of this cause of action may have been earlier than that of the causes of action based on bad faith.

Allstate's apparent misapprehension of the nature of the plaintiff's fourth cause of action may also account for its failure to raise any arguments specifically addressed to whether the allegations contained therein are legally sufficient to state a valid claim based on common-law fraud. It is doubtful whether a cause of action sounding in fraud may be based on allegations that Allstate deceived Mr. Thorpe with respect to its intent to perform the obligations contained in its contract with him (see generally, *Gordon v De Laurentiis Corp.*, 141 AD2d 435, 436; *Elsky v KM Ins. Brokers*, 139 AD2d 691; *Edwil Indus. v Stroba Instruments Corp.*, 131 AD2d 425; *Spellman v Columbia Manicure Mfg. Co.*, 111 AD2d 320; cf., *Apple Records v Capitol Records*, 137 AD2d 50).

Because these arguments were not specifically made in support of Allstate's motion to dismiss, ordinarily it would be inappropriate for the Supreme Court, or this court, to grant relief based on them (see, e.g., *Jemison v Crichlow*, 139 AD2d 332, 343; *Savino v Board of Educ.*, 123 AD2d 314, 315 [on motion to dismiss, court should consider only arguments specifically raised]). However, given the circumstances of this case, Allstate should be granted leave to renew that branch of its motion which was to dismiss the fourth cause of action, both on the basis that that cause of action based on fraud may be time barred, and on the basis that the allegations in that cause of action may be legally insufficient (CPLR 3211 [a] [7]; 3211 [a] [5]; 213 [8]). As the record now stands, proper resolution of these questions would require this court to consider and pass on legal issues which have not been addressed by the parties, something that we are most hesitant to do.

## VI

The question remains whether the allegations contained in

the fourth cause of action, as well as elsewhere in the complaint, are sufficient to sustain a demand for punitive damages. The fourth cause of action contains allegations that, in addition to having defrauded Mr. Thorpe, Allstate has, in fact, made it a standard business practice to defraud all of its insureds. It is alleged, for example, that Allstate has an "undeviating policy of improperly terminating insurance coverage, refusing to appear, answer and defend their *[sic]* insureds, ignoring American Arbitration Association decisions and Court Orders in regard to coverage, refusing to honor judgments and invariably refusing to pay the full policy limits * * * regardless of the merits of a particular case".

Although these allegations are made "[u]pon information and belief", they are to be considered true for the purposes of a motion to dismiss pursuant to CPLR 3211 (a) (7) *(see, Mihlovan v Grozavu,* 72 NY2d 506; *Arrington v New York Times Co.,* 55 NY2d 433). For the purposes of determining whether punitive damages may be available, it must be assumed that the plaintiff will be able to prove not only that Allstate acted in "bad faith" in the particular case now under review, but also that Allstate in fact has an "undeviating" policy of dishonoring the covenant of good faith implicitly contained in all of its automobile liability policies.

In *Walker v Sheldon* (10 NY2d 401, 405), which was an action based on allegations of fraud, the Court of Appeals held that exemplary damages may be awarded where it is proved that the defendant's deceit was "aimed at the public generally" and "evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations". Because actions based on breach of contract, including those involving insurance contracts, ordinarily represent attempts to redress private, rather than public, wrongs, application of the standard announced in *Walker v Sheldon (supra,* at 405) has generally precluded the recovery of punitive damages in such actions *(see, e.g., Halpin v Prudential Ins. Co.,* 48 NY2d 906; *see also, Supreme Automotive Mfg. Corp. v Continental Cas. Co.,* 126 AD2d 153, 155; *Samovar of Russia Jewelry Antique Corp. v Generali, Gen. Ins. Co.,* 102 AD2d 279, 282; *Shapiro v Prudential Ins. Co.,* 81 AD2d 661; *Royal Globe Ins. Co. v Chock Full O'Nuts Corp.,* 86 AD2d 315; *Holoness Realty Corp. v New York Prop. Ins. Underwriting Assn.,* 75 AD2d 569). In this case, however, the allegations of the complaint accuse Allstate not only of having committed a private civil wrong against Mr. Thorpe, but a

pattern of civil wrongs "aimed at the public generally", so that punitive damages would apparently be warranted under the standard set forth in *Walker v Sheldon (supra)*. Nevertheless, we conclude that punitive damages are not recoverable by the individual plaintiff in this case as a method for redressing the public wrong allegedly committed by Allstate, because the Legislature has, by statute, created a different remedy for this type of public wrong, and this court has previously held that such a remedy exists to the exclusion of any private one.

Insurance Law § 2601 defines "unfair claim settlement practices", and authorizes the imposition of a monetary penalty upon any insurer found guilty of engaging in such practices (Insurance Law § 2601 [c]; § 109 [b]). In *Cohen v New York Prop. Ins. Underwriting Assn.* (65 AD2d 71, *supra),* the Appellate Division, First Department, stated that this statute "does not create a private right of action but rather affords a public right of redress by the Insurance Department". Justice Sullivan, writing for the court, further stated that " '[t]he statute performs the very same disciplinary function, which the plaintiff would have us apply here, and *obviates the necessity for the maintenance of causes of action for punitive damages in insurance cases' " (Cohen v New York Prop. Ins. Underwriting Assn., supra,* at 79 [emphasis added], quoting from *Labrina Corp. v New York Prop. Ins. Underwriting Assn.,* NYLJ Apr. 18, 1974, at 2, col 1; *see also, Frizzy Hairstylists v Eagle Star Ins. Co.,* 93 Misc 2d 59).

In *Kurrus v CNA Ins. Co.* (115 AD2d 593), this court agreed with the decision of the First Department in the Cohen case *(supra),* as subsequently reaffirmed by that court in *Royal Globe Ins. Co. v Chock Full O'Nuts Corp.* (86 AD2d 315, *supra)* and held that Insurance Law § 2601 does not authorize private actions for punitive damages in order to redress the public wrong involved when an insurer engages in unfair claim practices. Furthermore, the court held that the administrative remedy embodied in Insurance Law § 2601 serves the very same purpose as that which justifies the imposition of punitive damages in private actions, namely, the purpose of deterring conduct which is harmful to the public-at-large. The court stated that "[a] cause of action brought pursuant to section 2601 would essentially perform a disciplinary function and, hence, would serve the same purpose as a private right of action for recovery of punitive damages" *(Kurrus v CNA Ins. Co., supra,* at 594; *Cosmopolitan Mut. Ins. Co. v Nassau Ins. Co.,* 99 Misc 2d 1018, 1019).

Following the *Kurrus* case *(supra),* this court stated in *Mavroudis v State Wide Ins. Co.* (121 AD2d 433, 434) that "claims of persistent unfair settlement practices * * * are the exclusive province of the New York State Superintendent of Insurance and may not give rise to an independent cause of action for punitive damages under the rule in *Walker v Sheldon".* In this case, the complaint essentially alleges that Allstate has persistently engaged in unfair settlement practices, albeit of a particularly wanton kind. Similarly, in the case of *Kent Centre Assocs. v Greater N. Y. Mut. Ins. Co.* (139 AD2d 630), this court affirmed the dismissal of a cause of action in which the plaintiff sought to impose punitive damages based on the defendant insurer's alleged unfair claim settlement practices "with regard to the plaintiff's claim and the claims of other insureds".

The decisions in the *Kent Centre, Mavroudis, Kurrus* and *Cohen* cases *(supra)* reflect the general view that public officers or institutions are better suited than private litigants for the redress of essentially public, rather than private, wrongs, and that the imposition of those administrative or penal sanctions which are available to the State or its public agencies should displace the awarding of punitive damages in private lawsuits as the chief, if not exclusive, method of punishing and deterring misconduct which is aimed at the public in general. In sum, the abolition of punitive damages in actions of this sort has been advocated for this very reason, i.e., that "[p]unishment should be left to the State, not to individuals" (16A Appleman, Insurance Law and Practice § 8879, at 467). We interpret the aforenoted appellate authority as demonstrating that this rationale has in fact been adopted in this State and the rule in New York is that punitive damages may not be awarded in private actions against insurance carriers based upon allegations of the type of misconduct which would fall within the ambit of the statutory definition of "unfair claim settlement practices" pursuant to Insurance Law § 2601.

It is also noteworthy that the measure of damages possibly available to a plaintiff insured upon proof of a defendant insurer's bad-faith refusal to settle, that is, the full amount of the excess judgment against the insured, has itself been characterized as "punitive" *(Gordon v Nationwide Mut. Ins. Co., supra,* at 433, 436-437; *see also, DiBlasi v Aetna Life & Cas. Co.,* 147 AD2d 93, *supra; AFIA v Continental Ins. Co.,* 140 AD2d 167, 168-169). Such a monetary award, based upon the full extent of the excess judgment against the insured, is

demonstrably more punitive than compensatory in nature when it is issued in favor of an insured in the absence of any proof that the insured has actually paid, or is even capable of paying, the excess judgment. Whether the full extent of the excess judgment should serve as the measure of damages in a bad-faith action where the insured is insolvent or otherwise incapable of paying that judgment has itself been questioned (e.g., *Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427, 448-452, supra [dissenting opn]; *Gordon v Nationwide Mut. Ins. Co.*, 37 AD2d 265, 272-274, supra [dissenting opns]; *Kulak v Nationwide Mut. Ins. Co.*, 47 AD2d 418, 421, revd on other grounds 40 NY2d 140; *Levantino v Insurance Co.*, 102 Misc 2d 77, 83-87 [Lazer, J.]; cf., *Gordon v Nationwide Mut. Ins. Co.*, 37 AD2d 265, 271, revd on other grounds 30 NY2d 427, supra; *Henegan v Merchants Mut. Ins. Co.*, 31 AD2d 12, 15, supra). We need not decide this issue in this case in its current posture; rather, we merely observe, assuming that Allstate's insured is incapable of paying the underlying judgment against him, that any recovery based on the full amount of that judgment would itself have a distinctly punitive aspect. We do not believe that it would be appropriate to impose, under these circumstances, a second level of punitive damages, so as to result in a total money judgment that exceeds not only the limits of liability contained in Allstate's policy, but also the amount of the underlying judgment in the underlying action as well.

We conclude that allegations that an insurance company is engaging in a persistent course of conduct involving fraud or unfair claims practices may more properly be evaluated and, if proved, be redressed by the Superintendent of Insurance, who is charged by law with the regulation of this industry, rather than by private litigants. The availability of punitive damages in private lawsuits premised on unfair claim practices has been preempted by the administrative remedies available to the Superintendent of Insurance pursuant to Insurance Law § 2601. Accordingly, the plaintiff's demand for punitive damages in the present case is stricken.

## VII

We agree with Allstate's contention that the plaintiff's third cause of action should be dismissed. The allegations in that cause of action constitute an attempt to impose strict liability upon Allstate for its failure to settle the underlying

case within the policy limits. Pursuant to the theory expressed in this cause of action, Allstate would be liable for the full amount of the underlying judgment upon proof that (1) its policy was in effect as of September 29, 1986, and (2) an offer to settle the underlying action within the limits of Allstate's policy was made and refused. It is clear, however, that to impose liability on this basis alone would be contrary to law. As noted above, in order to succeed, the plaintiff will have to prove that Allstate's rejection of any settlement offer was not merely the result of negligence, but was instead the result of Allstate's "disingenuous or dishonest" bad faith. The third cause of action based on "absolute liability" should therefore be dismissed, because it asserts a theory of liability not recognized in New York law (CPLR 3211 [a] [7]).

## VIII

To sum up, the Supreme Court properly denied those branches of Allstate's motion which were to dismiss the plaintiff's first and second causes of action, either on the basis that the allegations contained therein were legally insufficient (CPLR 3211 [a] [7]) or on the basis that those causes of action were time barred (CPLR 3211 [a] [5]). However, the court erred in denying that branch of Allstate's motion which was, in effect, to strike the plaintiff's demand for punitive damages. The Supreme Court also erred in denying that branch of Allstate's motion which was to dismiss the third cause of action, because New York law does not recognize "strict liability" in cases such as this one. Furthermore, the Supreme Court should have granted Allstate leave to renew those branches of its motion which were to dismiss the fourth and the fifth causes of action, as it appears from the papers submitted that Allstate may, upon the production of certain additional evidence and additional arguments, be entitled to the relief requested in those branches of its motion, and because Allstate's failure to produce such evidence or raise such arguments is, under the circumstances of this case, excusable.

Accordingly, the order appealed from is modified by deleting the provision thereof denying those branches of the defendant's motion which were to dismiss the plaintiff's third cause of action, and to strike the demand for punitive damages, and substituting therefor provisions granting those branches of the motion, by deleting the provision thereof

striking the defense of the Statute of Limitations in its entirety and substituting therefor a provision striking that defense except with respect to the plaintiff's fourth and fifth causes of action, and by adding a provision granting the defendant leave to renew those branches of its motion which were to dismiss the fourth and fifth causes of action, and as so modified, the order is affirmed. The appeal from the decision is dismissed, as no appeal lies from a decision.

MOLLEN, P. J., SULLIVAN and HARWOOD, JJ., concur.

Ordered that the appeal from the decision is dismissed; and it is further,

Ordered that the order is modified, on the law, by (1) deleting the provision thereof which denied those branches of the defendant's motion which were to dismiss the plaintiff's third cause of action and to strike the demand for punitive damages, and substituting therefor a provision granting those branches of the motion, (2) deleting the provision thereof striking the defense of the Statute of Limitations in its entirety and substituting therefor a provision striking that defense except with respect to the plaintiff's fourth and fifth causes of action, and (3) by adding a provision thereto granting the defendant leave to renew those branches of its motion which were to dismiss the fourth and fifth cause of action; as so modified, the order is affirmed; and it is further,

Ordered that the plaintiff is awarded one bill of costs.