■ ELY-CRUIKSHANK Co., INC., Appellant, v BANK OF MONTREAL et al., Respondents.—Order, Supreme Court, New York County (Myriam J. Altman, J.), entered November 26, 1990, which granted the defendants' motion to dismiss the complaint, modified, on the law, to reinstate the first cause of action, and otherwise affirmed, with costs.

The plaintiff alleged that it was entitled to a brokerage commission on a sale of a building owned by the defendant Bank of Montreal ("Bank"). The sale was completed shortly more than two months after the Bank terminated its exclusive brokerage agreement with the plaintiff, which agreement included an exclusive right to sell. The plaintiff further alleged that the sale resulted from negotiations initiated by the Bank with the buyer during the life of that agreement. The

contract also granted the plaintiff the exclusive right to negotiate a sale. The dissent maintains that this breach of contract cause of action is time-barred, since the applicable six year statute of limitations began to run either at the time the Bank began negotiating with the buyer, or at the time the Bank terminated its agreement with the plaintiff. The plaintiff, of course, maintains that the sale negotiations were wilfully concealed from it.

However, a statute of limitations begins to run upon the accrual of a cause of action and a cause of action does not accrue until its enforcement becomes possible *(Jacobus v Colgate,* 217 NY 235; *Roldan v Allstate Ins. Co.,* 149 AD2d 20). In this case, that did not occur until the sale of the premises, when the duty to pay the plaintiff's commission arose *(see, Schochet v Public Natl. Bank,* 220 App Div 201). The mere allegations of a breach of contract are insufficient to sustain a complaint in the absence of allegations of fact showing damage *(Reade v Sullivan,* 259 App Div 229; *Brooklyn Union Gas Co. v Interboro Surface Co.,* 87 AD2d 833; *Ryan Ready Mixed Concrete Corp. v Coons,* 25 AD2d 530). Further, this is not a case, as maintained by the dissent, in which the plaintiff could have brought an action upon termination for commissions expected to accrue under that agreement in the future *(Afshar v Procon Inc.,* 442 F Supp 887, 889 [SD NY], *affd* 580 F2d 1044; *O'Connell v Rao,* 70 AD2d 982, 983, *lv denied* 48 NY2d 609). This is so since the contract gave the plaintiff the exclusive right to negotiate and the exclusive right to sell, and since it is maintained by the plaintiff that the defendant conducted the negotiations in secret and reached its contract to sell in secret.

The plaintiff could not sustain a cause of action until the defendant Bank refused to pay it the commission which was due only upon the sale. Accordingly, the plaintiff's action seeking to recover its commission on the sale of the property is not barred by the statute of limitations. Concur—Murphy, P. J., Rosenberger and Rubin, JJ.

Carro and Asch, JJ., dissent in a memorandum by Carro, J., as follows: Plaintiff real estate broker asserts that it is entitled to a brokerage commission for the sale on February 1, 1984, of a building owned by defendant Bank of Montreal ("Bank"), which sale took place two months after the Bank's termination of an exclusive brokerage agreement. As the agreement provided that all inquiries for sale of the premises "shall be referred to [plaintiff], and all negotiations connected therewith shall be conducted solely by or under the direction

of [plaintiff]," plaintiff might have a cause of action against the Bank if, as it alleges, the Bank secretly negotiated for the sale of the premises and then terminated the brokerage agreement in order to deprive plaintiff of its commission *(O'Connell v Rao,* 70 AD2d 982, *lv denied* 48 NY2d 609; *cf., Green & Assocs. v Heydt,* 167 AD2d 328).

Nevertheless, I would affirm the order dismissing the complaint on the ground asserted below, but not reached by the IAS court, that any such cause of action would be time-barred because it was not brought within six years (CPLR 213 [2]) of the Bank's termination of the contract pursuant to Article VI (a) thereof, effective November 30, 1983. The breach of contract, if any, must have occurred either prior to the termination of the contract, when the defendant Bank allegedly dealt with the purchaser without plaintiff's knowledge in violation of the exclusive brokerage agreement, or upon termination of that agreement. Since this is not the "rare case where the breach [of contract] and the harm engendered by the breach are not simultaneous events" *(Brooklyn Union Gas Co. v Interboro Surface Co.,* 87 AD2d 833), the six-year period of limitations should be measured not from the sale of the premises, as plaintiff argues, but at the latest from the Bank's termination of the agreement.

"A cause of action accrues and the Statute of Limitations begins to run when a contract is breached * * * although damages may not accrue until a later date" *(Edlux Constr. Corp. v State of New York,* 252 App Div 373, 374, *affd* 277 NY 635; *West 90th Owners Corp. v Schlechter,* 137 AD2d 456, 458; *see,* 75 NY Jur 2d, Limitations and Laches, § 156). Plaintiff's rights were grounded in the 1980 agreement which was terminated on November 30, 1983. Upon such termination plaintiff could bring an action for the loss of commissions expected to accrue under that agreement in the future *(Afshar v Procon Inc.,* 442 F Supp 887, 889 [SD NY], *affd* 580 F2d 1044). In language singularly apropos of the instant case, that court stated: "Failures to make commission payments which came due since the termination of the agency do not constitute independent wrongs: the right to those payments was established by the agency agreement, and the time within which an action must be brought with respect to failure to make such payments commenced to run when the agency agreement was terminated." *(Supra,* at 890.)

Article VI (d) of the 1980 agreement specified the only circumstance under which plaintiff would be entitled to a commission for a real estate transaction consummated after

termination of the agreement: "Upon and after the termination of this agreement * * * [the Bank] shall recognize [plaintiff] as the broker in any pending negotiation for a *lease* of said premises * * * and in the event of the consummation thereof [the Bank] shall pay to [plaintiff] a commission therefor at the rate prescribed in supplemental Article V hereof" (emphasis added). This provision granting plaintiff the limited right to a commission for consummation of a *lease* after termination of the agreement, cannot justify reinstatement of the plaintiff's first cause of action seeking a commission for the *sale* of the entire building two months after the agreement was terminated.

Moreover, if the plaintiff is *not* alleging wrongful termination of the 1980 agreement, then the replacement agreement executed by the parties on December 1, 1983 surely defines the parties' rights and obligations after that date. The 1983 agreement does not make plaintiff a rental or sales agent for the premises; and Article VI (d), which under the 1980 agreement granted plaintiff the right to a lease commission after termination, was stricken from the 1983 agreement.

Ordinarily, a broker's right to a commission is established when he produces a buyer who is ready, willing and able to purchase at the terms set by the seller *(Geller v New England Indus.,* 535 F2d 1381, 1385). But this principle presupposes that contemporaneously, there is a contract in force establishing the claimant as a broker and entitling him to a commission. In this case, the 1980 agreement which the plaintiff relies upon for its claimed entitlement to a commission had been terminated, as unconditionally allowed under the agreement, two months prior to the date that the majority asserts the cause of action arose. Thus the majority has resuscitated plaintiff's first cause of action for breach of a terminated, or nonexistent agreement.

Under the authority of the majority's holding in this case, any property owner who has *ever* had an exclusive brokerage agreement for the sale of his property, and has terminated that agreement pursuant to its terms, will be subject to a breach of contract lawsuit alleging secret negotiations and seeking brokerage commissions for six years after he sells his property. It will not matter, for Statute of Limitations purposes, that the agreement under which the broker claims his rights had been lawfully terminated six years and two months (as in this case), or seven years, or even ten years prior to the commencement of the action, because the holding of this case is that the cause of action did not accrue until the property

was sold, or even later, as alternatively expressed by the majority, when the defendant Bank refused to pay the commission.

In construing our Statute of Limitations, we should give "due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought." *(Reading Co. v Koons,* 271 US 58, 62.) As articulated by Justice White in *United States v Kubrick* (444 US 111, 117): "These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise [citations omitted]." The court's decision in this case gives the plaintiff more than the reasonable time afforded by the Legislature to present its claim; it does not encourage the prompt presentation of claims; and it imposes upon the defendant and our overburdened legal system the obligation to adjudicate a breach of contract claim which should have been brought within six years of termination of the contract.